UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven Gewecke; and

Tamara Gewecke,

Plaintiffs,

v.

U.S. Bank, N.A., as trustee for
CitiGroup Mortgage Loan Trust
2007-AMC1;

CitiGroup Mortgage Loan Trust
2007-AMC1;

Argent Mortgage Company, LLC;

ACC Capital Holdings Corporation;
and

Countrywide Home Loans, Inc.,

Defendants.

**Case No. 0:09-cv-01890-JRT-RLE**


**ARGENT MORTGAGE COMPANY,
LLC'S AND ACC CAPITAL
HOLDINGS CORPORATION'S
MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO
DISMISS AND/OR STRIKE AMENDED
COMPLAINT**

I.     **INTRODUCTION**

In the face of pending foreclosure after failing to pay on their mortgage, Plaintiffs

ask this Court to impose the draconian remedy of rescission based on an alleged technical

violation by Defendant Argent Mortgage Company during the closing on Plaintiffs'

mortgage in September 2006.  Plaintiffs further seek to impose liability on Defendants

Argent and ACC Capital Holdings Corporation related to current foreclosure

proceedings, despite the fact that neither Argent nor ACC have an interest in Plaintiffs'

mortgage and have no responsibility or role in any foreclosure proceeding that may be brought against Plaintiffs.

Plaintiffs' efforts cannot succeed. Argent clearly and conspicuously advised Plaintiffs of their right to rescind their mortgage as required by the Truth in Lending Act ("TILA"), and, contrary to Plaintiffs' suggestion, neither the TILA nor its implementing regulation require a mortgagor to use a particular model disclosure form. Accordingly, Plaintiffs' TILA claims should be dismissed.

Plaintiffs' claims for injunctive and declaratory relief should similarly be dismissed against Defendants Argent and ACC. They have no present interest in Plaintiffs' mortgage, they did not initiate the foreclosure proceedings and thus have no ability to prevent such proceedings from going forward, and they could not be part of any order enjoining such proceedings from going forward. Moreover, to the extent that Plaintiffs' claims seek to invalidate the assignment of mortgage between Defendants Argent and US Bank, Plaintiffs are not parties to the assignment and therefore lack standing to challenge it.

Finally, Plaintiffs' claim for slander of title fails on multiple grounds. Plaintiffs have not identified a false statement, they do not allege any publication by Argent or ACC, they fail to allege any facts demonstrating malice by Argent or ACC, and they do not identify special damages.

For all of these reasons, Plaintiffs' Amended Complaint against Argent and ACC should be dismissed.

If, however, the Court disagrees, Defendants Argent and ACC respectfully request that the Court strike from Plaintiffs' Amended Complaint their highly-inflammatory and irrelevant allegations concerning Roland Arnall, Ameriquest Mortgage Company, and purportedly illegal lending practices that are not even at issue in this lawsuit. These allegations were undoubtedly made to try to taint Argent by association, and they should not be allowed to stand.[1]

## II.   FACTUAL ALLEGATIONS[2]

Plaintiffs obtained a refinance home loan from Argent on or around June 7, 2005. Am. Compl. ¶ 11. Plaintiffs refinanced with Argent a second time on September 5, 2006. *Id.* ¶ 13. The loan was secured by a mortgage on Plaintiffs' primary residence, located at 3013 15th Street North in St. Cloud, Minnesota, and was payable on its face to Argent. *Id.* At their closing on September 5, Plaintiffs received a notice of their right to cancel

---

[1]   In true kitchen-sink fashion, Plaintiffs have asserted nine different claims against five different Defendants. In so doing, Plaintiffs have failed to identify which Defendants are being accused of which claims. ACC and Argent have therefore attempted in this motion to address all of the claims that appear as though they might be against Argent. Plaintiffs' claims for breach of contract (Count VI), violation of the Real Estate Settlement Procedures Act (Count VIII), and violation of the Minnesota Mortgage Servicing Statute (Count IX) do not appear to be claims against Argent or ACC and therefore are not addressed in this brief. Am. Compl. ¶¶ 130, 151-153, 158-159. If Plaintiffs contend otherwise, Argent and ACC respectfully reserve the right to be fully heard on those claims, as well.

[2]   Argent and ACC accept Plaintiffs' factual allegations, where not expressly contradicted by a document, as true for the purposes of this motion only.

the transaction.  *Id.* ¶ 15.  The Notice of Right to Cancel, which was signed by Plaintiffs,

states in pertinent part as follows:

> You are entering into a transaction that will result in a
> mortgage/lien/security interest on your home.  *You have a
> legal right under federal law to cancel <u>this transaction</u>,
> without cost, within THREE BUSINESS DAYS . . . .*

> If you cancel the transaction, the mortgage/lien/security
> interest is also cancelled . . . .

> If you decide to cancel this transaction, you may do so by
> notifying us in writing . . . .  You may use any written
> statement that is signed and dated by you and states your
> intention to cancel, or you may use this notice by dating and
> signing below.

*See* Notice of Right to Cancel, Affidavit of Britta Loftus, at Exhibit A (emphasis added).[3]

This notice was an almost verbatim copy of the Federal Reserve Board Model Form H-8.

Am. Compl. ¶ 97.  Nearly two-and-a-half years later, and in the face of imminent

foreclosure as a result of Plaintiffs' failure to pay on their mortgage loan, Plaintiffs sent a

notice of rescission of the mortgage loan to all Defendants.  Am. Compl. ¶¶ 25-26, 101.

## III.   ARGUMENT

### A.   Legal Standard For Dismissal Pursuant To Rule 12(b)(6).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court

accepts as true the facts alleged in the complaint.  The Court must measure the Plaintiffs'

---

[3]   The Court may rely upon documents referenced in, or "necessarily embraced by," the
complaint, *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1068
(8th Cir. 2004); *Pentair, Inc. v. Wisconsin Energy Corp.*, 545 F. Supp. 2d 917, 919
(D. Minn. 2008), and "documents whose contents are alleged in the complaint, and
whose authenticity nobody questions, but which are not physically attached to the
pleadings."  *Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003).

allegations against the fact-based plausibility standard set forth by the Supreme Court in

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Under that standard, a court

may begin its analysis by "identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth," but must be supported by factual

allegations.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  A complaint that provides

only "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555.

If there are well-pled factual allegations, the court must "determine whether they

plausibly give rise to an entitlement to relief." *Id.*  Affirming the applicability of

*Twombly* to all civil cases earlier this summer, the Supreme Court stressed that

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 129 S. Ct. at 1950.

> **B.     Plaintiffs' Complaint Should Be Dismissed For Failure To State Any Legally Cognizable Claims Against Argent Or ACC.**
>
> > **1.     <u>Plaintiffs Undisputedly Received A Clear And Conspicuous Notice Of Their Right To Rescind And Have Therefore Failed To State Any Cognizable TILA Claims (Counts I and II).</u>**

The TILA grants consumers a three-day rescission period for any consumer credit

transaction where a security interest is given against the consumer's primary residence.

15 U.S.C. § 1635(a).  The three-day rescission period begins to run when the transaction

is consummated or upon delivery of notice of the consumer's right to rescind, whichever

occurs later.  *See id*.  Under the TILA, the lender must clearly and conspicuously disclose

to the consumer the consumer's rescission rights. *See id.* If the lender fails to meet the TILA's disclosure requirements, the three-day rescission period may be extended to three years. 15 U.S.C. § 1635(f).

In order to make it easier for lenders to fulfill their disclosure requirements, the Federal Reserve Board has issued an implementing regulation known as Regulation Z. 12 C.F.R. § 226.1(a) ("This regulation, known as Regulation Z, is issued by the Board of Governors of the Federal Reserve System to implement the federal Truth in Lending Act, which is contained in Title I of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601 *et seq.*).").  Regulation Z includes an appendix with model forms for various consumer credit transactions. 12 C.F.R. § 226.23(4)(b)(2); 12 C.F.R. § 226, Appx. H. The statute permits the lender to inform consumers of their rescission rights by using "the appropriate form of written notice published and adopted by the [Federal Reserve] Board, *or a comparable written notice* of the rights of the obligor." 15 U.S.C. § 1635(h) (emphasis added).  Regulation Z is equally clear that either type of notice will satisfy the lender's obligation: "To satisfy the disclosure requirement . . . the creditor shall provide the appropriate model form in Appendix H of this part *or a substantially similar notice*." 12 C.F.R. § 226.23(b)(2) (emphasis added). Notably, the TILA plainly states that use of the model forms is not compulsory. *See* 15 U.S.C. § 1604(b) ("[n]othing in this title may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section.").

Plaintiffs, however, ask the Court to ignore the plain language of the TILA and Regulation Z and impose per se liability on Argent because it did not use Model Form

H-9 – or at least the precise language set out in Model Form H-9 – and instead used Model Form H-8.  Am. Compl. ¶¶ 15-17, 96-98.  Plaintiffs complain that Argent's use of Model Form H-8 was inadequate because it purportedly did not adequately inform them of their limited to right to rescind in the context of a same-lender refinancing.  Am. Compl. ¶¶ 15-17.  Specifically, Plaintiffs contend the notice failed to inform them they could not rescind their prior June 7, 2005, mortgage.  Am. Compl. ¶¶ 92, 94-96.

Quite plainly, neither the TILA nor Regulation Z require the use of the model forms.  Thus, the only question is whether the notice Argent undisputedly provided complied with the TILA.  The answer to that question is a resounding "yes, it did."

The TILA requires only that the disclosure "clearly and conspicuously disclose" the borrowers' rescission rights.  15 U.S.C. § 1635(a).  Regulation Z elaborates on this disclosure standard by listing the five elements of a clear and conspicuous disclosure:

> The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

Argent's disclosure notice met all of these elements.  It was contained in a separate document that clearly and conspicuously disclosed that Argent retained a security interest in Plaintiffs' dwelling and informed Plaintiffs of their right to rescind the present loan transaction:  "You are entering into a transaction that will result in a mortgage/lien/security interest on your home.  *You have a legal right under federal law to cancel <u>this transaction</u>, without cost, within THREE BUSINESS DAYS. . . .*"  *See* Loftus Aff., Ex. A (Notice of Right to Cancel) (emphasis added).  Argent's notice set forth a section on "HOW TO CANCEL," informing Plaintiffs how to go about exercising their right to rescind.  *See id.* ("[i]f you decide to cancel *this transaction*, you may do so by notifying us in writing . . . .  You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below." (emphasis added)).  Plaintiffs were also plainly advised that their "FINAL DATE TO CANCEL" was September 8, 2006.  *See id.*  And finally, Plaintiffs were advised of the effects of rescission.  *See id.* ("[i]f you cancel the transaction, the mortgage/lien/security interest is also cancelled . . .").

In *Santos-Rodriguez v. Doral Mortgage Corporation*, 485 F.3d 12 (1st Cir. 2007), the First Circuit was faced with the same argument that Plaintiffs attempt to advance here – namely, that the defendant had "failed to comply with the TILA's disclosure requirements because it gave plaintiffs a form patterned on Model Form H-8, which is designed for general transactions, rather than one pattered on Model Form H-9, which is designed for same-lender refinancing transactions."  485 F.3d at 15.  Analyzing the same

disclosure language as that at issue here, the court concluded the defendant had met its

disclosure obligations:

> The form plaintiffs received explained, among other things, that (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind "this transaction," without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled.  Because the form clearly stated that rescission was available only as to "this transaction," [the defendant] clearly and conspicuously informed plaintiffs that any rescission would only operate as to the current refinancing transaction.

*Id.* at 17.

The *Santos-Rodriguez* court similarly rejected the plaintiff's argument that a

disclosure based on Model Form H-8 is misleading because it failed to inform them that

if a same-lender refinancing loan is cancelled, their original loan is not cancelled.  Noting

that the "key question . . . is whether [the defendant] clearly and conspicuously informed

plaintiffs of their right of rescission and the effects thereof," the court stated:

> [I]t is true that the disclosure statement plaintiffs received did not affirmatively inform them, as the H-9 form would have, that rescission of the refinance transaction would not also rescind their original mortgage. However, we do not require perfect disclosure.  The question before us is not whether the notification in Form H-9 would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z.  Evaluating, as we must, [the defendant's] disclosure from the vantage point of the hypothetical average consumer, we conclude that because plaintiffs were told, clearly and conspicuously, that rescission would only operate as to their pending refinance transaction, any conclusions that they might have drawn from that disclosure about their previously existing mortgages were unreasonable (and, thus, not a valid basis for any TILA claim).

*Id.* at 19.  The court thus affirmed dismissal of the plaintiffs' TILA claims.  *Id.* at 19.  *See also Veale v. Citibank*, 85 F.3d 577, 580 (11th Cir. 1996), *cert. denied* 520 U.S. 1198 (1997) ("[w]e hold that . . . the H-8 form provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded"); *Mills v. EquiCredit Corp.*, 172 Fed. Appx. 652, 657 (6th Cir. 2006) (approving of the district court's conclusion that "assuming that the form used by EquiCredit was technically incorrect . . . the form nonetheless informed Appellants of their right to cancel the loan transaction") (unpublished opinion).

Argent's notice gave Plaintiffs clear and conspicuous notice of their rescission rights related to the current transaction.  Plaintiffs were thus made aware of their limited right to cancel, and their attempt to impose a hyper-technical notice standard under the TILA is improper.

Indeed, Congress amended the TILA in 1995 "to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations."  *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007) (citing Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, § 3, 109 Stat. 271, 272-73).  These changes came on the heels of what was viewed as a "troubling decision" by the Eleventh Circuit where that court permitted a small violation of the Act's disclosure requirements to trigger the right of rescission.  *Id.* (discussing *Rodash v. AIB Mtg. Co.*, 16 F.3d 1142 (11th Cir. 1994); citing 141 Cong. Rec. S14566, 14567 (statement of Sen. Sarbanes)).  By taking the step to amend, "Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made

10

CASE 0:09-cv-01890-JRT-LIB   Document 36   Filed 11/16/09   Page 11 of 23

to face overwhelming liability for relatively minor violations," "including the selection of an incorrect form for disclosure of rescission rights. . . ." *Id.* (citing Truth In Lending Act Class Action Relief Act of 1995, Pub. L. No. 104-12, § 2, 109 Stat. 161, 161-62). *See also In re Groat*, 369 B.R. 413, 418 (8th Cir. 2007) (noting that since "Congress amended TILA, '[m]ost courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice'" and thus affirming denial of debtor's claim for rescission based on a simple error (quoting *Santos-Rodriguez*, 485 F.3d at 16)); *Smith v. Highland Bank,* 108 F.3d 1325, 1327 n.4 (11th Cir. 1997) (noting that the TILA was amended out of concern that courts were permitting plaintiffs to rescind their mortgages based on minor TILA violations).

The Notice of Right to Cancel, which Plaintiffs undisputedly received and signed on September 5, 2006, clearly and conspicuously advised them of their limited right to cancel "this transaction" and further made clear that such right expired after midnight on September 8, 2006.  Accordingly, Argent respectfully requests that the Court dismiss Plaintiffs' TILA claims (Counts I and II) for failure to state a claim upon which relief may be granted.

2. **Argent and ACC Are Not Proper Parties To Plaintiffs' Claims For Declaratory Relief And Thus, To The Extent Plaintiffs Purport To Make Those Claims Against Argent And ACC, Such Claims Should Be Dismissed (Counts III, IV, and V).**

In Counts III, IV, and V, Plaintiffs attack the foreclosure proceedings against their home and seek declaratory relief from the Court.  While Plaintiffs fail to specifically identify which of the several Defendants these claims are against, a closer examination of

the wrongs alleged and relief sought makes clear that the claims are not against Argent or ACC.  Specifically, Plaintiffs attack the Notice to Foreclose by Advertisement contending that "Defendants . . . failed to satisfy the statutory prerequisites for foreclosure by advertisement" and that "Defendants . . . do[] not have and did not have the statutory authority to foreclose by advertisement. . . ."  Am. Compl. ¶¶ 107-109 (Count III).  Plaintiffs thus seek a declaration that "Defendants have not satisfied the pre-requisites to foreclose by advertisement" and an injunction preventing "Defendants from commencing a foreclosure by advertisement."  Am. Compl. ¶¶ 120-122 (Count V).  Plaintiffs further attack Defendant US Bank's status as a creditor, seeking a declaration that US Bank lacks standing and an order requiring US Bank to file a release of the August 11, 2008 Assignment of Mortgage.  Am. Compl. ¶¶ 114-116 (Count IV).

Quite simply, none of these allegations or claims for relief have anything to do with Argent or ACC.  As Plaintiffs concede, US Bank "purports to own the mortgage and note related to" their home, and it is US Bank that has initiated foreclosure proceedings.  Am. Compl. ¶¶ 5, 23-26, 51.  Plaintiffs have not – and, indeed, cannot – make any allegations against ACC or Argent related to the pending foreclosure on their home because, as Plaintiffs implicitly concede, neither Argent nor ACC have any present interest in the mortgage on their home.

At the end of the day, neither Argent nor ACC bears responsibility for the actions of which Plaintiffs complain, and neither will be impacted by any order the Court may make on Plaintiffs' claims for injunctive relief.  Argent and ACC therefore are not proper parties to these claims.  *See Independent Glass Ass'n, Inc. v. Safelite Group, Inc*., 2005

WL 2093035, at *10 (D. Minn. Aug. 26, 2005) (dismissing all claims against a third

defendant where the plaintiffs only sought injunctive relief and such relief would only

impact the practices of two defendants, but would have no reference to the third).[4]

Plaintiffs will undoubtedly contend that Argent should be retained as a party to

these claims because Plaintiffs are challenging the August 11, 2008 Assignment of

Mortgage on the dubious grounds that Argent purportedly had no interest to assign, did

not receive valid consideration, and the assignment was not signed by both parties to the

assignment.  Am. Compl. ¶ 115.  Plaintiffs are thus likely to argue that if the Court were

---

[4]   *RKO-Stanley Warner Theatres, Inc. v. Mellon Nat'l Bank & Trust Co.*, 436 F.2d 1297,
1304 (3d Cir. 1970) (dismissing complaint as to one defendant where "the complaint
request[ed] no specific relief against [that defendant]" and "it [wa]s difficult to
imagine how injunctive relief against [that defendant] could help [plaintiff]" obtain
the desired relief); *Hartford Accident & Indem. Co. v. Hop-On Int'l Corp.*, 568 F.
Supp. 1568, 1569 (D.C.N.Y. 1983) ("As no relief has been sought against [defendant]
by [plaintiff], the complaint fails to state a claim upon which relief can be granted to
[plaintiff] against [defendant]."); *Common Cause v. Federal Election Comm'n*, 82
F.R.D. 59, 60 (D.D.C. 1979) (dismissing the American Medical Association as "an
improper party to the action" where "the complaint d[id] not seek or request any relief
against the organization"); *Shahrdar v. Tech Data Corp.*, 2006 WL 1750955, at *1-*2
 (W.D. La. May 24, 2006) (recommending dismissal of complaint as against one
defendant where court found "no legal theory in Plaintiff's complaint that would
permit relief to be granted against Defendant"); *Chamarac Props., Inc. v. Pike*, 1992
WL 332234, at *4, *18 (S.D.N.Y. Nov. 2, 1992) (adopting the magistrate judge's
recommendation that plaintiff's claim for an injunction against two of the defendants
be dismissed "for failing to set forth any factual predicate for injunctive relief" against
those defendants); *Plant Process Equip., Inc. v. Continental Carbonic Prods., Inc.*,
1990 WL 43536, at *2  (N.D. Ill. Mar. 30, 1990) (dismissing claim against third party
defendant where party bringing claim admitted that "no relief [wa]s presently sought
against" third party defendant).

to invalidate the assignment, then perhaps Argent might have some interest in the mortgage and foreclosure proceedings.[5]

Plaintiffs' allegations regarding the Assignment of Mortgage and any arguments they may make regarding that assignment are nothing more than red herrings that fail to provide Plaintiffs with any valid legal ground for retaining Argent or ACC in this lawsuit on their claims for declaratory relief.  As an initial matter, the Assignment of Mortgage states that "valuable consideration" was provided, it was executed by Argent, was notarized, and was "Certified, Filed, and/or Recorded" by the Office of County Recorder of Stearns County, Minnesota, on September 10, 2008.  *See* Loftus Aff., Exhibit B (Assignment of Mortgage).

Moreover, Plaintiffs do not – and cannot – claim that they are parties to the assignment.  Nor can they claim they are the intended third-party beneficiaries of the assignment.  In the absence of being a party to or intended beneficiary of the assignment,

---

[5]   Indeed, any such arguments are nothing more than speculation about what might happen if the Court were to invalidate the assignment and conclude that Argent retains an interest in Plaintiffs' mortgage.  Plaintiffs' speculation about what might happen – and how Argent might respond – and Plaintiffs' corresponding effort to seek injunctive relief related to speculative future conduct by Argent – is not ripe for consideration by this Court in this action.  *Public Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (noting that "[t]he ripeness doctrine applies to declaratory judgment actions," and that while "[a] declaratory judgment action can be sustained if no injury has yet occurred," a claim is not ripe for adjudication unless the injury is "certainly impending" (citations omitted)).

Plaintiffs lack standing to challenge its validity or the adequacy of consideration given.[6]

*See Ponchik v. King*, 957 F.2d 608, 609 (8th Cir. 1992) (affirming the district court's

conclusion that plaintiffs lacked standing to bring suit where they were neither parties nor

third-party beneficiaries to contract at issue); *AT&T Mobility, LLC v. National Ass'n for*

*Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1362 (11th Cir. 2007) (noting that plaintiff

was not a third-party beneficiary of the contract and therefore lacked standing to

challenge another party's interpretation of the contract); *Bochese v. Town of Ponce Inlet*,

405 F.3d 964, 984 (11th Cir. 2005) (finding that plaintiff lacked standing to bring

challenge to contract because he was neither a party to nor intended beneficiary of the

contract); *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 356 (S.D.N.Y. 2002)

(granting motion to dismiss where plaintiff had not executed the agreement, because "in a

complaint challenging the validity of a contract, typically only the actual or alleged party

to the contract is in a position to challenge its validity" (citations omitted)).  *See also In*

*re Halabi*, 184 F.3d 1335, 1338 (11th Cir. 1999) (finding that because assignment "does

not change the nature of the interest of the mortgagor," "a failure to record any

---

[6]   When the issue of standing is raised, Rule 12(b)(1) is implicated and, if standing is
lacking, the court does not have subject matter jurisdiction.  *See Faibisch v.
University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002); *Friedmann v. Sheldon Cmty.
Sch. Dist.*, 995 F.2d 802, 804 (8th Cir. 1993).

subsequent assignment [does not] afford the mortgagee . . . an opportunity to avoid the mortgage" (citations omitted)).[7]

For all of these reasons, dismissal of Plaintiffs' declaratory relief claims (Counts III, IV, and V) is therefore proper.

**3.      Plaintiffs Fail To Identify Any False Statements Published By Argent Or ACC With Malice And Therefore Their Slander Of Title Claim Must Be Dismissed (Count VII).**

In order to state a claim for slander of title, a plaintiff must allege that the defendant made a false statement concerning the plaintiff's real property that was published with malice to others and that such publication caused pecuniary loss in the form of special damages.  *See Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000). Filing an inoperative document, if done maliciously, may constitute slander of title.  *Id*. at 280; *see also Kelly v. First State Bank,* 177 N.W. 347, 347 (Minn. 1920) ("Filing for record an instrument known to be inoperative is a false statement within the rule, and if done maliciously it is regarded as slander of title.").  "'It is clear, however, that if a man does no more than file for record an instrument which he has a right to file, he commits

---

7    Nor can Plaintiffs invalidate the assignment based on an allegation that it was "not endorsed or signed by both parties to the transaction."  This is a statute of frauds defense, and Plaintiffs do not have standing to raise it.  *See Countrywide Home Loans, Inc. v. Brown*, 223 Fed. Appx. 13, 14, 2007 WL 706535, at *1 (2d Cir. Mar. 8, 2007) (finding that because "a statute of frauds defense cannot be raised by a third party to the contract at issue," mortgagee could not prevent assignee from prosecuting this foreclosure action on the basis of an absence of a written assignment of mortgage); *Abdulhay v. Bethlehem Medical Arts, L.P*., 425 F.Supp.2d 646, 660 (E.D. Pa. 2006) (dismissing claims of third parties to contract because they would not "have standing to assert the statute of frauds defense").

no wrong.'"  *In re Nielsen*, 1998 WL 386384, at *4 (Bankr. D. Minn. July 9, 1998)

(quoting *Kelly v. First State Bank*, 145 Minn. 331, 332, 177 N.W. 347 (Minn. 1920)).

Here, Plaintiffs' slander of title claim comes down to their bald contention that false claims were made within the assignment of mortgage, "namely that Argent assigned a mortgage loan directly to the securitized trust."  Am. Compl. ¶ 139.  Plaintiffs claim this was a false assignment that was then "published maliciously" when it was publicly recorded and published in the newspaper as part of the foreclosure action.  Am. Compl. ¶¶ 136, 139.  Plaintiffs' claim fails on multiple grounds.

As a threshold matter and as discussed above, Plaintiffs have no standing to challenge validity of the assignment, which is the basis for their claim.  Moreover, other than their conclusory assertions, Plaintiffs have alleged no facts to demonstrate any false statements in the assignment.  Where a plaintiff fails to produce evidence of a false statement, the defendant is entitled to judgment as a matter of law.  *Burgmeier v. Bjur*, 2003 WL 42178, at *2-*3  (Minn. Ct. App.  Jan. 7, 2003).  Thus, in *Burgmeier*, the court found that the quitclaim deed at issue merely "convey[ed] . . . interest . . . in the described real property and ha[d] no other effect," and, accordingly, was not a false statement.  *Id.* at *2.  Because "there can be no publication of a false statement" when the filed document "is not false," the plaintiff failed to satisfy the first element of the cause of action.  *Id.*

Nor can Plaintiffs establish the element of publication against Argent or ACC.  The publications of which Plaintiffs complain are the recording of the assignment and the publication of the facts concerning the assignment in the newspaper as part of the

foreclosure proceeding.  Am. Compl. ¶¶ 136, 139.  But as Plaintiffs concede, neither Argent nor ACC had any role in those publications.  Am. Compl. ¶¶ 23-26.

Plaintiffs similarly cannot establish malice by ACC or Argent concerning the Assignment of Mortgage.  "The element of malice requires a '[r]eckless disregard concerning the truth or falsity of a matter . . . despite a high degree of awareness of probable falsity or entertaining doubts as to its truth.'"  *Brickner v. One Land Dev. Co*., 742 N.W.2d 706, 711-12 (Minn. Ct. App. 2007) (citation omitted)).  Courts have explained that malice requires "that the disparaging statements be made without a good faith belief in their truth," *Smith v. Toomey*, 1997 WL 526316, at *1 (Minn. Ct. App. Aug. 26, 1997), or "that they were made without probable cause," *Burgmeier*, 2003 WL 42178, at *2 (citing *Ouevli Farms, Inc. v. Union Sav. Bank & Trust Co*., 226 N.W. 191 (Minn. 1929)).  In *Burgmeier*, the court found there was no malice "[b]ecause the statement [at issue] consist[ed] of the quitclaim deed, which merely convey[ed] any interest hypothetically acquired."  *Id*., at *2.  In *Palatine Nat'l Bank of Palatine, Ill. v. Olson*, the court found no showing of malice where "[a]t worst, respondent made a legal error," because "such a mistake does not sustain a slander of title claim."  1995 WL 697520, at *2 (Minn. Ct. App. Nov. 28, 1995).

Finally, Plaintiffs cannot establish special damages.  In order to establish such damages, Plaintiffs must show that "expenses were incurred . . . as a result of the filing of the [instrument]" and not from other disputes.  *Burgmeier*, 2003 WL 42178, at *2. Where the expenses "would most likely have been incurred" regardless of the filing of the instrument, a plaintiff has failed to show specific damages in the form of attorney

fees.  *Id.*  Here, regardless of whether their mortgage was assigned, Plaintiffs are facing

foreclosure because of their failure to make their contractually agreed upon mortgage

payments.

For all of these reasons, Plaintiffs have failed to state a claim for slander of title

against ACC or Argent, and the claim should be dismissed.

### C.   If Plaintiffs' Complaint Against Argent And ACC Is Not Dismissed, Their Allegations Regarding Roland Arnall, Ameriquest, And Other Illegal Lending Practices Should Be Stricken.

In their Amended Complaint, Plaintiffs include a host of allegations that seek to

taint Argent and inflame prejudice against it "by association" based on the alleged past

conduct of Roland Arnall, founder of ACC, and Ameriquest, a different mortgage lending

company.  Am. Compl. ¶¶ 52-78.  Plaintiffs claim Argent and Ameriquest were nothing

more than shell corporations, created to originate and churn mortgage loans for the

purpose of generating personal wealth for Arnall and his family through various illegal

and fraudulent means in the mortgage lending industry.  *Id.*  In so doing, Plaintiffs use

language that is irrelevant and is plainly intended to inflame.  For example, Plaintiffs

allege that Arnall, Ameriquest, Argent, and ACC belong to "mortgage lending empire"

composed of "a web of companies" that included "the number one subprime lender (i.e.,

Ameriquest)," and that – using "bait-and-switch tactics" in an attempt to "roadblock" and

"interfere with the public's attempt to hold [them] accountable" – they "funneled

billions" in "loans that were fed to Wall Street investment firms," resulting in "hundreds

of aggrieved homeowners."  Am. Compl. ¶¶ 52-55, 57-58, 61-62, 65.  Plaintiffs even cite

to a 2005 article published in the *Los Angeles Times* that does not even mention Argent,

but instead talks about Ameriquest and how it was part of the Ameriquest training to watch *Boiler Room*, "a 2000 movie about fast-talking, young stock swindlers who revel in their powers of anything-goes salesmanship."  Am. Compl. ¶ 64.

Plaintiffs' allegations should be stricken from their Amended Complaint.  "The Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A matter is considered "immaterial" where it "has no essential or important relationship to the claim for relief" and "impertinent" where it "do[es] not pertain, and [is] not necessary, to the issues in question."  *In re Potash Antitrust Litig.*, 1994 WL 1108312, at *4 n.5 (D. Minn. Dec. 5, 1994) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517 (1994)).  A motion to strike may be properly granted "if the disputed matter 'is irrelevant under any state of facts which could be proved in support of the claims being advanced.'"  *Id.* at *5 (quoting *Reiter's Beer Distribs., Inc. v. Schmidt Brewing Co.*, 657 F. Supp. 136, 143 (E.D.N.Y. 1987)).  The question is thus whether the disputed allegations are irrelevant such that they would be inadmissible at trial.  *Id.*

 Applying these standards, Chief Magistrate Judge Raymond L. Erickson in *Potash* ruled that the plaintiffs' allegations of historical bad conduct in the potash industry should be struck from the complaint.  The complaint there contained allegations that were "intended to illustrate the predisposition of the potash industry to collusion; the archival presence of certain, ostensibly accepted, precursors to successful price-fixing; and, the continuing inducement to conspire that is presented by the economic milieu of trading in potash."  *Id*. at *5.  While acknowledging that such allegations may be

germane to plaintiffs' claims, the court nonetheless concluded that "the prejudice that arises from such a genre of accusations is foreboding in that they impart an implication of guilt—through attainder or lineage—with no more in the way of validation than a prior engagement in a common trade, or an association by corporate name." *Id*. at 6.  The court thus granted the defendants' motion to strike, noting that it would "not embrace the pleading of a historical background which imparts a predominately prejudicial bite." *Id*. at *7.[8]

Here, the relationship of the disputed allegations to Plaintiffs' claims is as tenuous, if not more so, than those at issue in *Potash*.  Indeed, the only specific wrongful conduct that forms a basis for any claims against Argent is Argent's alleged failure to provide the

---

[8]   *See also Anderson v. Chase Manhattan Mortgage Corp.*, 1997 WL 94697, at *1 (8th Cir. Mar. 6, 1997) (striking "improvident, insolent and scandalous" accusations); *U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc*., 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) (striking paragraphs discussing inadmissible settlement negotiations); *Radtke Patents Corp. v. Coe*, 121 F.2d 103, 103 (D.C. Cir. 1941) (granting motion to strike matters from briefs on the ground that they contain irrelevant, immaterial, and scurrilous matter); *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 183 (M.D. Pa. 2008) (granting motion to strike after finding that allegations were immaterial); *Hegre v. Alberto-Culver USA, Inc*., 508 F. Supp. 2d 1320, 1325-26 (S.D. Ga. 2007) (granting motion to strike to the extent that declarations complained of contained immaterial or irrelevant averments); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 398 (D. Md. 2004) (granting motion to strike allegations that were immaterial as a matter of law); *Cairns v. Franklin Mint Co*., 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (granting motion to strike plaintiffs' allegation that "defendants are '[l]ike vultures feeding on the dead'"); *Porter v. International Bus.s Machs. Corp.*, 21 F. Supp .2d 829, 832 (N.D. Ill. 1998) (granting motion to strike immaterial and irrelevant accusations, which, if permitted to remain in the complaint, would unfairly prejudice defendant); *Kounitz v. Slaatten*, 901 F. Supp. 650, 658 (S.D.N.Y. 1995) ("[B]ecause the allegations . . . are immaterial and impertinent as well as inflammatory and scandalous, the Defendants' motion to strike them from the complaint is granted.").

correct Model Form disclosure statement regarding Plaintiffs' right to rescind.[9]  Plaintiffs make no claims that Argent engaged in churning, bait-and-switch tactics, or any other wrongful or fraudulent conduct with respect to their mortgage loan transaction.

Simply put, neither Arnall nor Ameriquest are parties to this lawsuit.  Moreover, the illegal and fraudulent financing practices complained of are not at issue in this lawsuit and have no bearing on the appropriateness of Argent's rescission notice.  Instead, these allegations were undoubtedly made for one primary purpose:  to inflame sentiments against Argent based on its common parentage with Ameriquest in an effort to obfuscate the fact that Plaintiffs do not have viable claims against Argent.  Thus, if those claims are not dismissed in their entirety on Rule 12 grounds, Argent and ACC respectfully request that Plaintiffs' allegations in Paragraphs 52 through 78 be stricken from their Amended Complaint because the probative value of such allegations is slight, whereas the likely prejudice to Argent and ACC is substantial.

---

[9]   While Plaintiffs also seek to hold Argent and ACC responsible for the purportedly wrongful foreclosure on their home based on purported issues with the assignment of the mortgage, as discussed above, those claims are not properly against Argent or ACC, and there is no specific wrongful conduct by Argent or ACC related to any of Plaintiffs' other claims.

## CONCLUSION

For the foregoing reasons, Argent and ACC respectfully request that Plaintiffs' claims against them be dismissed with prejudice.  Alternatively, if all claims are not dismissed as to Argent and ACC, Argent and ACC respectfully request that the Court strike Paragraphs 52 through 78 from Plaintiffs' Amended Complaint.

Respectfully submitted,

Dated:  November 16, 2009

DORSEY & WHITNEY LLP

By s/Britta Schnoor Loftus
   Shari L. Jerde #0306551
   jerde.shari@dorsey.com
   Britta Schnoor Loftus #0388020
   loftus.britta@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Defendants*
*Argent Mortgage Company, LLC and*
*ACC Capital Holdings Corporation*