## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Steven Gewecke,

Tamara Gewecke,

Case File No.: 0:09-CV-01890
(JRT/RLE)

Plaintiffs.

vs.

US Bank, N.A., as trustee for CitiGroup
Mortgage Loan Trust 2007-AMC1;

CitiGroup Mortgage Loan Trust 2007-
AMC1;

Argent Mortgage Company, LLC;

ACC Capital Holdings Corporation;

Countrywide Home Loans, Inc.;

Defendants.

**PLAINTIFFS' RESPONSE
MEMORANDUM IN OPPOSITION TO
ARGENT MORTGAGE COMPANY,
LLC AND ACC CAPITAL HOLDINGS
CORPORATION'S MOTION TO
DISMISS**

Defendants Argent and ACC's motion to dismiss and strike should be denied. For

the reasons set forth in the Plaintiffs' motion for partial summary judgment, the Court

should find that Argent and ACC violated the Truth In Lending Act, rather than

dismissing them from this case. With regard to Counts III, IV, V, and VII, both Argent

and ACC Capital are proper parties to this action. The illegal actions of any one of the

other Defendants are properly imputed to Argent and ACC Capital because they are all engaged in a joint venture.

## I.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

Defendants make broad sweeping arguments in support of their motion to dismiss, but, when each argument is specifically analyzed, they are unpersuasive and often defy common-sense.  Faced with foreclosure, Plaintiffs have a right to assert violations of the Truth and Lending Act.  Plaintiffs also have a right to challenge the validity of the lien recorded against their property when that lien is being used by Defendants to take their home.  Defendants' argument that Plaintiffs lack standing, if accepted by the court, means that no homeowner would ever have a right to challenge the validity of a lien recorded against their property.  The homeowner would simply have to allow whomever to foreclose and evict them, even if that person recorded a fraudulent lien in violation of Minnesota law.  Legally and as a matter of public policy, Defendants' arguments are simply wrong.

A.    **Defendant Argent Violated The Truth In Lending Act By Failing To Clearly and Conspicuously Disclose Material Terms Related To Plaintiffs' Right To Rescind.**

Defendants primarily make three arguments in support of their motion to dismiss Plaintiffs' Truth In Lending Act claims.[1]  First, Defendants argue that Count I is merely a "technical" violation and, therefore, Plaintiffs are not entitled to statutory relief.   Second, Defendants claim that the disclosure used by Argent was sufficient.  Defendants make this argument even though, according to their own recitation of the law, the disclosure was deficient on its face.  Third, Defendants urge this Court to reject the majority opinion and adopt the minority approach to Truth In Lending Act claims.  In essence, Defendants ask this Court not to construe the Truth In Lending Act as a consumer protection statute and not liberally construe the statute and related regulations in favor of consumers.

1.    **Defendants Are Sophisticated Lenders And Must Strictly Comply With The Technical Requirements Of The Truth In Lending Act.**

Throughout Defendants' memorandum, they suggest that lenders do not have to strictly comply with the technical requirements of the Truth In Lending Act.  Strict compliance with the technical requirements of the Act, however, is well established. *See Hamm v. Ameriquest*, 506 F.3d 525, 529 (7th Cir. 2007) (noting that past attempts by federal courts to look at functionality rather than the formalistic requirements of TILA have been expressly rebuked by the Federal Reserve Board).

---

[1] Plaintiffs will not repeat the legal arguments made in their own motion for Partial Summary Judgment, but rather incorporate those portions of their memorandum herein by reference.

3

It is often said that when it comes to the Truth In Lending Act, "hyper-technicality" rules. *Hamm*, 506 F.3d at 529; *Cowen v. Bank United of Texas,* 70 F.3d 937, 941 (7ᵗʰ Cir. 1995) ("hyper-technicality reigns" in TILA cases); *Jackson v. Grant,* 890 F.2d 118, 119 (9ᵗʰ Cir. 1989)("Even technical or minor violations of the TILA impose liability on the creditor."); *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3ʳᵈ Cir. 1990)("Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.")

Therefore, technicality is not a defense. Even if Defendants' violations of the Act are deemed "technical," Defendants must still be found liable. Defendants' attempt to modify well-established rules relating to TILA liability should be rejected, and they cite no applicable Eighth Circuit precedent to support their arguments. It should be noted, however, that Plaintiffs do not agree with the characterization of Defendants violations of the Truth In Lending Act as merely technical. As described below, Defendants disclosure violation was substantive and material.

### 2.    Argent's Cancellation Notice Provided To Plaintiffs Did Not Include All Of The Statutorily Required Information.

The Truth In Lending Act's mandatory disclosure requirements are clear, and it is equally clear that Defendants failed to satisfy these requirements. Defendants correctly stated and conceded in their memorandum that there are five elements that must be present in order to comply with the Act. *See* Defendants' Memorandum at p. 7 (citing Regulation Z, 12 C.F.R. § 226.23 (b)(1)(2008)). Specifically, Regulation Z requires:

4

The notice shall be on a separate document that identifies the transaction
and shall clearly and conspicuously disclose the following:

(i)   The retention or acquisition of a security interest in the consumer's
principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii)  How to exercise the right to rescind, with a form for that purpose,
designating the address of the creditor's place of business.

*(iv) The effects of rescission, as described in paragraph (d) of this section.*

(v)  The date the rescission period expires.

12 C.F.R. § 226.23(b)(1) (2008) (emphasis added).

Defendants began to analyze each of the elements in the order set forth in
Regulation Z, but then stopped. Defendants failed to provide a detailed analysis of the
one element that is actually at issue in this case. The element at issue in this case is
whether Defendants "clearly and conspicuously" disclosed the effects of rescission, as
described in paragraph (d) of Regulation Z. Rather than address the central issue related
to the Plaintiffs' Truth In Lending Act claim, Defendants, instead, just declared their
compliance with the Act. Then, Defendants provided the Court with a misleading
excerpt of their original disclosure to the Plaintiffs:

And finally, Plaintiffs were advised of the effects of rescission. *See id.*
*("[i]f you cancel the transaction, the mortgage/lien/security interest is*
*also cancelled...")*

Defendants' Memorandum at p. 8 (emphasis added). The Defendants' excerpt is
misleading because the Defendants' used an ellipsis to hide the operative language of the

disclosure. The violation of the Act turns on the disclosure language that Defendants omitted. The actual disclosure is as follows:

> If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, **we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given us or anyone else in connection with this transaction.**

Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, Aff. of Steven Gewecke, ¶ 11, Ex. C (emphasis added).

As stated above, Defendants were required to clearly and conspicuously disclose the effects of rescission pursuant to Regulation Z. In this case, the effects of rescission are modified because it is a same-lender refinancing. In this case, rescission means that only the newly extended credit would be rescinded and the existing loan with Argent would be reinstated. Argent's disclosure incorrectly stated that the effect of rescission would be to"[cancel] the mortgage/lien/security interest" at which point Argent would then cancel the entire security interest and "return to you any money or property you have given us or anyone else in connection with this transaction." *Id.* Therefore, not only did Defendants fail to clearly and conspicuously disclose the effects of rescission, Defendants disclosure was totally wrong. As a same lender refinancing, Argent was not going to cancel the security interest and was not going to return any money or property the Plaintiffs gave to Argent, because the original lien would be reinstated.

### 3.   The Truth In Lending Act Is A Consumer Protection Statute That Must Be Liberally Construed To Protect Consumers.

The Defendants primarily rely on two cases where the Model H-8 Form was found to be substantially similar to the Model H-9 Form. The two cases are *Santos-Rodriguez v. Doral Mort. Corp.*, 485 F.3d 12 (1st Cir. 2007) and *Veale v. Citibank,* 85 F.3d 577 (11th Cir. 1996). In both *Santos* and *Veale*, the courts adopt a minority view of the Truth In Lending Act that is inconsistent with the majority of circuit courts. Specifically, *Santos* and *Veale* never acknowledge that TILA is, at its core, a consumer protection statute. That status affects the presumption that courts should have, at the outset, when interpreting the language of the statute and the implementing regulations.

As recently stated by the Eighth Circuit Court of Appeals:

*TILA* was passed by Congress as a consumer protection act, and its provisions, as well as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers, "[A]lleged violations of TILA are subject to an objective standard of review. Courts have applied such an objective standard regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds."

. . . .

Notice must be provided "on a separate document that identifies the transaction and . . . clearly and conspicuously discloses" the debtor's rights. A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction.

*Rand Corp. v. Moua,* 559 F.3d 842, 845-46 (8th Cir. 2009) (citations omitted)

In both *Santos* and *Veale*, the courts do not recognize that the Act is remedial legislation. *Santos* and *Veale* treat consumers as if they were equal to the lending institutions in both knowledge and sophistication. Implicit in the *Santos* and *Veale* decisions is the presumption that the consumers are dealing with a highly sophisticated

financial institution at arms' length and with equal knowledge. *Santos* and *Veale* interpret the statute with neutrality, but the nature and purpose of the Act require that the statute's language be interpreted in favor of the consumer.

The presumption is always to interpret the statute to afford the consumer the greatest amount of protection. This is a long-standing concept of statutory interpretation, and the courts in *Santos* and *Veale* fail to recognize this requirement and interpret the statute and regulations accordingly. Had the courts in *Santos and Veale* construed the language of the Truth In Lending Act and its implementing regulations liberally and in favor of consumers, then their approach, analysis, and ultimate result would have been different.

If the Eighth Circuit wanted to follow the path of the Eleventh and First Circuit Courts, the Eighth Circuit Court of Appeals could have done so in *Moua.* The Eighth Circuit Court of Appeals, however, affirmed its prior standard of liability. *See Moua,* 559 F.3d at 845. Like the Eighth Circuit Court of Appeals, the Seventh Circuit Court of Appeals held that there was no reason to follow *Santos* involving Defendant Argent's sister-company Ameriquest. *See Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007). Ameriquest's request for certification to overturn the Seventh Circuit's decision to the United States Supreme Court was denied. *Ameriquest Mortg. Sec., Inc. v. Hamm*, 128 S. Ct. 1706 (2008).

8

**B.    Plaintiffs Have Stated Valid Claims Related To Defendants'
       Fraudulent Assignment.**

Argent and ACC are proper parties to this action and Plaintiffs have asserted valid

claims against them.  The basic test of whether there is standing is rooted in whether

there is a true case or controversy.  *See Gladstone, Realtors v. Village of Bellwood*, 441

U.S. 91, 99, 99 S.Ct. 1601 (1979).  A case or controversy exists only if a plaintiff has

"suffered some actual or threatened injury as a result of the putatively illegal conduct of

the defendant." *Id.*  If there is no case or controversy, then there is no subject matter

jurisdiction for the court.  *See Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th

Cir. 2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter

jurisdiction.").

"For purposes of ruling on a motion to dismiss for want of standing, both the trial

and reviewing courts must accept as true all material allegations of the complaint, and

must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422

U.S. 490, 501 (1975) (citations omitted).  When ruling on a motion to dismiss for lack of

jurisdiction or failure to state a claim, a court must assume "that all the allegations in the

complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations omitted).

In this case, Defendants are proper parties [2] because Argent and ACC are engaged

in a joint venture with the other Defendants.  Therefore, the actions and relief sought

---

[2] In Defendants memorandum, Argent and ACC claim that they are separate corporate entities.  For the reasons set
forth in Section D of this memorandum, Argent and ACC should be treated as the same entity.

against the other Defendants are rightly imputed to Argent and ACC and vice versa.

Related to Count IV, Argent and ACC may also be joined as necessary parties pursuant to

Federal Rules of Civil Procedure 19. Related to Count VII, Argent and ACC are also

proper parties because they aided and abetted the commission of a tort---slander of title.

Under these legal theories, Plaintiffs' claims against Argent and ACC should not be

dismissed.[3]

### 1.     Defendants Are Engaged In A Joint Venture.

The parties involved with the securitization and servicing of Plaintiffs' mortgage

loan are engaged in a joint venture. "A joint venture is frequently defined as an

association of two or more persons formed to carry out a single business enterprise for

profit." 46 Am. Jur. 2d *Joint Ventures* § 1 (1994). In Minnesota, a joint venture is

created when two or more persons combine their money, property, time, or skill in a

particular business enterprise and agree to share jointly, or in proportion to their

respective contributions, in the resulting profits and, usually, in the losses. *Meyers v.*

*Postal Finance Co.,* 287 N.W.2d 614, 617, 618 (Minn. 1979); *See also Masterson*

*Personnel, Inc. v. The McClatchy Co.,* 2005 WL 3132349 (D. Minn.); *Schuett v. Monaco*

*Coach Corp.*, 1995 WL 697707 (Minn. Ct. App.).

---

[3] Underlying all of Plaintiffs' claims is the general disarray and sloppiness of the mortgage origination and servicing industry. The issue of fraudulent and unrecorded assignments have been raised in numerous cases. *See e.g. In re Hayes,* 393 B.R. 259, (Bankr. Mass. 2008) (denying motion based on standing of movant); *In re Hwang,* 396 B.R. 757, (Bankr. C.D. Cal. 2008) (denying motion for relief due to standing because "the owner of the note today is unknown"); *In re Nosek,* 386 B.R. 374, 387-388 (Bankr. Mass. 2008) ("Ameriquest argues that assignments of notes and mortgages frequently occur with documentation of the transfers recorded, and even executed, at a later time....If the transfer of such negotiable instruments occurs at such a fast pace and without timely recorded evidence of the transfers, why should the Court and Debtor's counsel be expected to know the roles of the parties? **The burden is clearly on the sophisticated, albeit careless, lenders and servicers.**" (emphasis added)) There is also mounting allegations that mortgages have been lost, sold without consent, and generally mishandled. *See e.g Deutsche Bank v. Bank of America,* Complaint, Civil Action No. 09-cv-9784 (S.D.N.Y. November 25, 2009) (alleging that Bank of America wrongly transferred more than $1.7 billion and did not properly track mortgages sold).

An enterprise does not constitute a joint venture unless each of the following four elements are present. *Id.* First, there must be contribution from each party. Specifically, the parties must combine their money, property, time, or skill in some common undertaking, but the contribution of each need not be equal or of the same nature. *Id.* Second, there must be a proprietary interest and right of mutual control over the subject matter. *Id.* Third, there must be a sharing of profits, but not necessarily of losses. *Id.* Fourth, there must be a contract, whether express or implied, showing that a joint adventure was in fact entered into. *Id.*

In this case, each of these elements are satisfied by the terms of the Pooling and Servicing Agreement as well as the underlying contracts that funneled mortgages to Wall Street and ultimately turned them into bonds.[4] Plaintiffs alleged in paragraphs 79 through 87 of their Amended Complaint all of the requisite elements to establish a joint venture.

The existence of a Pooling and Servicing Agreement is enough to survive a motion to dismiss, because the contract terms of such an Agreement are prima facie evidence of a joint venture. *See Short v. Wells Fargo,* 401 F.Supp.2d 549, 565(S.D. West Virginia 2005) (holding that certain paragraphs within a standard Pooling and Servicing Agreement satisfy the initial elements for establishing joint venture). Underwriting documents used by the parties involved in the mortgage loan origination may also satisfy

---

[4] There appears to be no dispute among the parties that the Plaintiffs' mortgage loan was securitized or that the Defendants attempted to securitize the Plaintiffs' mortgage loan. Plaintiffs, however, do not know who exactly securitized the mortgage, when that securitization occurred, and the specific trust where Plaintiffs' mortgage loan was ultimately deposited. That issue is in dispute and discovery is needed to ultimately establish the elements of joint venture.

11

the initial elements of joint venture. *Herrod v. First Republic Mortg. Corp.*, 218 W. Va.

611, 621 (2005).

As aptly stated by Prof. Christopher L. Peterson in his law review article entitled

*Predatory Structured Finance*:

> [T]here does not appear to be a principled reason why joint venture rules
> would be inapplicable to structured finance. In securitization deals, the
> pooling and servicing agreement is an explicit agreement to carry on an
> enterprise for profit by the different businesses involved in the conduit,
> including mortgage brokers, lenders, MERS, servicers, sellers,
> underwriters, trustees, and trusts, or an SPV taking a different legal form.
> Each of these parties fulfill a specific function within a structured finance
> deal and all have control over their own particular role. At least some of the
> parties in some cases agree to share in the losses and profits of the venture.
> For example, mortgage lenders frequently agree to repurchase non-
> performing loans from the trust. Mortgage brokers are only paid if any
> given loan closes and conforms to the underwriting standards of the loan
> pool. Servicers agree that their fees are contingent on performance aspects
> of the loan, such as whether borrowers pay on time. Sellers and
> underwriters agree to accept the price they can receive from selling
> securities, which is in turn dependent on the reputation and behavior of the
> originators, brokers, and servicers. Trustees agree to share in profits and
> losses, since they accept compensation out of the proceeds of consumers'
> monthly payments. And certainly a trust (or other type of SPV) itself agrees
> to share in profits and losses, given that trust income is completely
> dependent on performance of the loans it houses.

*See also* Christopher L. Peterson, *Predatory Structured Finance,* 28 Cardozo L. Rev.

2185, 2208, 2253-254 (2007). Based upon knowledge of the mortgage backed securities,

Plaintiffs believe that Argent and ACC were, in part, compensated for their contribution

of mortgage loans into the securitized trust with a percentage of the profits derived from

the ultimate sale of mortgage backed securities as well as direct ownership in some of the

trust's low-investment grade bonds and unrated or residual securities. Thus, Argent and

ACC shared in the profits and the on-going success of the joint venture, including the

servicing of mortgage loans in the trust.  Therefore, Argent and ACC are proper parties related to Counts III, IV, V, and VII.

### 2.     Argent And ACC Are Necessary Parties Pursuant To Rule 19 For Count IV.

Defendants are necessary persons needed for just adjudication of Plaintiffs' claims made in Count IV.  Under the federal rules of civil procedure, a person must be joined as a party in the action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

Fed. R. Civ. P. 19(a)(2008).  In Count IV, Plaintiffs seek both declaratory and injunctive relief related to the Defendants standing and status as a creditor. Specifically, Plaintiffs request that the Court declare the assignment from Argent to Defendant US Bank, as Trustee for the Certificateholders CitiGroup Mortgage Loan Trust, Inc. Asset-backed Pass-Through Certificates Series 2007 AMC-1 as void and cease any further collection efforts based upon that assignment.  Argent and ACC's absence will likely impede their own and the other party's protection of their interests.  Plaintiffs are also at risk of incurring double or otherwise inconsistent obligations related to their mortgage loan.  If the assignment is declared void, will Argent attempt to collect on the mortgage loan or is there

another unknown party that will step forward and declare that it is the owner of the mortgage loan?

### 3.    Argent and ACC Are Proper Defendants Related To Count VII Because They Aided and Abetted The Slander of Title.

Argent and ACC aided the other Defendants in recording an improper and false lien related to Plaintiffs' property. The Minnesota Supreme Court has long relied on the "well recognized" rule "that all who actively participate in any manner in the commission of a tort, or who procure, command, direct, advise, encourage, aid, or abet its commission, or who ratify it after it is done are jointly and severally liable for the resulting injury." *See Witzman v. Lehrman, Lerhman & Flom*, 601 N.W.2d 179, 185-186 (Minn. 1999) (citing *Greenwood v. Evergreen Mines, Co.,* 220 Minn. 296, 309, 19 N.W.2d 726, 733 (1945)).

In this case, Argent and ACC actively participated, aided, abetted, and since ratified the creation and filing of a fraudulent assignment. As stated in paragraph 134 of the Plaintiffs' Amended Complaint, the Defendants conspired to create a false chain of title through the fraudulent assignment of Plaintiffs' mortgage loan. Indeed, the assignment was "drafted and prepared" by the trust's foreclosure attorneys. *See* Assignment of Mortgage Loan Attached as Exhibit A. Argent had no interest to assign, and received no consideration for the assignment. *See* Plaintiffs' First Amended Complaint at ¶¶ 28-29. Indeed, according to Defendants' own electronic loan file, the loan's history is clear: "Previous Owner Name: CITIGROUP GLOBAL." *Id.* at ¶ 138.

14

The falsity of the assignment is also proven by the Pooling and Servicing

Agreement governing the conduct of CitiGroup Mortgage Loan Trust 2007-AMC1. *Id.* at

¶¶ 39-48.  According to the Pooling and Servicing Agreement, all assets must enter the

trust in the following manner:

**THE CREATION OF CITIGROUP MORTGAGE LOAN TRUST 2007-AMC1**
**HOW TRUST ASSETS MUST BE ACQUIRED**



**Step One**

CitiGroup Global Markets Realty Corp. obtains mortgage loans that have an aggregate value of $1.687 billion ("the pool") from Argent and Ameriquest

**Step Two**

CitiGroup Global Markets Realty Corp. identifies the specific mortgage loans and transfers them to CitiGroup Mortgage Loan Trust, Inc. by the close date, March 9, 2007.

**Step Three**

CitiGroup Mortgage Loan Trust, Inc. sells the pool of assets to the trust, CitiGroup Mortgage Loan Trust 2007-AMC1, in exchange for certificates or bonds.

**Step Four**

US Bank, as trustee for CitiGroup Mortgage Loan Trust 2007-AMC1, issues a series of certificates or bonds to CitiGroup Mortgage Loan Trust, Inc.

**Step Five**

CitiGroup Mortgage Loan Trust, Inc. with the help of Bear Stearns sells the certificates or bonds to investors around the world.

A reasonable inference from the Pooling and Servicing Agreement and internal loan file is that Argent and the trust conspired to file a false lien on the Plaintiffs' property. Plaintiffs, however, do not believe or concede that Citigroup Mortgage Loan Trust 2007-AMC1 is the actual owner of the Plaintiffs' mortgage. Plaintiffs' do not know who the actual owner of their mortgage loan is and, until ownership is proven, Plaintiffs will challenge any foreclosure.

In briefing these issues, Mr. and Mrs. Gewecke have cited the Pooling and Servicing Agreement for CitiGroup Mortgage Loan Trust 2007-AMC1, but Mr. and Mrs. Gewecke do not even know whether this is the right securitized trust. Argent and Ameriquest originated billions of dollars in loans in 2006 and 2007, and US Bank is the trustee for thousands of securitized mortgage pools. There is no objective evidence that provides the true chain of title or chain of endorsements that would ultimately prove that Mr. and Mrs. Gewecke's loan was one of the thousands of loans securitized into what eventually became CitiGroup Mortgage Loan Trust 2007-AMC1.

Couldn't Mr. and Mrs. Gewecke's loan just as easily been packaged and made a part of CitiGroup Mortgage Loan Trust 2007-AMC2 (a $1.26 billion pool comprised of 91% Argent loans), CitiGroup Mortgage Loan Trust 2007-AMC3 (a $ 1.08 billion pool comprised of 89% Argent loans), or CitiGroup Mortgage Loan Trust 2007-AMC4 (a $670 million pool comprised of 90% Argent loans)[5]? All of these trusts were created at

---

[5] Because of length, I have not submitted the Pooling and Servicing Agreements for each of these securitized trusts. They are, however, publicly available as follows: CitiGroup Mortgage Loan Trust 2007-AMC2 at http://www.sec.gov/Archives/edgar/data/1389858/000088237707000399/d637183_fwp.htm; CitiGroup Mortgage Loan Trust 2007-AMC3 at http://www.sec.gov/Archives/edgar/data/1395013/000088237707000977/d658334_fwp.htm; CitiGroup Mortgage

17

approximately the same time and by the same entities as CitiGroup Mortgage Loan Trust
2007-AMC1.

**C.    Defendants' Standing Arguments Mischaracterize Plaintiffs' Theory of
the Case.**

Argent and ACC's standing argument is premised on an incorrect characterization
of Plaintiffs' claims. Whether Plaintiffs have the right, as a third party, to challenge
contractual breaches of the Pooling and Servicing Agreement is not before this Court.
Nobody is asserting a claim for breach of contract or that they are some type of third-
party beneficiary. The Pooling and Servicing Agreement is not the basis for Plaintiff's
claims. Instead, the Pooling and Servicing Agreement is evidence that proves---either
directly or circumstantially---that the assignment is fraudulent. No Defendant should be
allowed to take Plaintiffs home away using a sham assignment.

Plaintiffs are in danger of losing their home through foreclosure proceedings.
They have a right to ensure that the correct person has recorded the lien on their property
and is pursuing foreclosure. Otherwise, any person could file a lien on any property and
the homeowner would have no legal recourse to stop a wrongful foreclosure.

---

Loan Trust 2007-AMC4 at
http://www.sec.gov/Archives/edgar/data/1399477/000088237707001671/d683201_ex424b5.htm

**D.    Plaintiffs Alleged Sufficient Facts To Be Allowed To Proceed And Establish That Argent and ACC Should Be Treated As The Same Entity.**

While ordinarily a parent corporation or successor corporation may be shielded from liability, Plaintiffs have alleged sufficient facts to proceed against ACC.  In Minnesota, there is a two-pronged test to determine whether a plaintiff may pierce the corporate veil and hold a shareholder or different entity liable for the actions of a corporation. *See Hoyt Props. v. Prod. Res. Group, L.L.C.,* 736 N.W.2d 313, 323 (Minn. 2007); *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn. 1997).  The first prong focuses on the relationship between the two entities to determine whether one has disregarded the other's separate, corporate existence.  *Id.*  In examining the first prong, courts look at the sufficiency of capitalization, observance of corporate formalities, nonpayment of dividends, siphoning of funds by the dominant shareholder, nonfunctioning of directors and officers, absence of corporate records, and existence of the corporation as a facade for individual dealings. *See Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn. 1979).

The second prong of a veil-piercing analysis requires the court  to determine that "piercing the corporate veil is necessary to avoid injustice or fundamental unfairness." *See Hoyt Props.,* 736 N.W.2d at 323.  In this case, Plaintiffs set forth over two dozen individual allegations related to the corporate structure and conduct of Argent, ACC and

its dominant shareholders, Roland Arnall and his family, which provide a basis to pierce the corporate veil. *See* Plaintiffs First Amended Complaint ¶¶ 52-78.

Plaintiffs alleged a systematic draining of assets to make Argent judgment-proof. *Id.* at ¶¶ 53, 58-59, 60-62. Plaintiffs also alleged that this siphoning of funds was done by the dominant shareholders (the Arnall family) and that the corporate structure was largely a façade. *Id.* at ¶¶ 53, 56,57,59,62. Plaintiffs further alleged the basis for why such conduct is unjust and contrary to fundamental fairness. *Id.* at 65-72. These allegations highlight part of the corporate philosophy and training of both Ameriquest brokers and affiliated Argent brokers that they should churn homeowners and refinance existing customers.

For many of the same reasons, ACC should also be held liable for the conduct of Argent as a successor corporation. Minnesota follows the traditional approach to corporate successor liability. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989). There are four circumstances under which successor corporations may be held liable for actions of a transferor corporation: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. *Id.* (citing *J.F. Anderson Lumber Co. v. Myers*, 206 N.W.2d 365, 368-69 (Minn. 1973).

In this case, by responding to the Plaintiffs' request to rescind the transaction, ACC impliedly agreed to assume some of the debts and responsibilities of Argent. *See*

20

*e.g. Smith v. Argent Mortgage Corp.*, 447 F.Supp. 2d 1194, 1199 (C. Colo. 2006) (holding that the letter denying the borrower's request to rescind the loan "could support a reasonable inference that HomEq is, at least in part, responsible for decisions regarding rescission of the transaction. Assuming the allegations in the Complaint to be true, it is conceivable that the plaintiffs could prove facts entitling them to relief against HomEq on [the TILA rescission] claim …"); *Williams v. Saxon Mortg. Services, Inc.*, 2007 WL 3124470 at *3 (S.D. Ala. Oct. 25, 2007) (fact question whether defendant was servicer or holder of loan; servicer may be estopped from escaping liability where it held itself out as holder during pre-litigation correspondence).

Plaintiffs have also set forth multiple allegations that ACC is merely a continuation of Argent and that the transfer from Argent to ACC of assets was done in order to escape liability for such debts. For these reasons, Argent and ACC should be treated as the same entity for the purposes of this litigation.

## E. Defendants' Motion To Strike Is Without Merit.

It is unclear what specific allegations that Defendants want to have struck. In their memorandum and in the Proposed Order there is no specific reference to particular paragraphs within the Plaintiffs' First Amended Complaint. Defendants' motion to strike is not only contrary to the traditional notions of notice pleadings, Defendants' motion is also contrary to their own request. Plaintiffs originally filed a Complaint that did not contain much detail related to the corporate relationship between Argent and ACC. Last fall, Defendants filed a motion to dismiss, based, in part, on Plaintiffs purported failure to make allegations related to ACC's liability. In response, Plaintiffs provided

21

approximately five pages outlining the relationship between the two entities and the

reasons why ACC should be held accountable as either a parent corporation or successor

corporation. Now, Defendants do not like those reasons and have moved to strikr some

or all (it is unclear) of the new allegations. As set forth above in section D, each of the

allegations set forth in Plaintiffs' First Amended Complaint are relevant to the

determination of whether this Court should pierce the corporate veil or hold ACC liable

as a successor corporation. Therefore, the motion to strike should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that this Court deny

Defendants Argent and ACC Capital Holding's motion to dismiss.

Dated: December 14, 2009

/s/ _____

Mark R. Ireland
Attorney, Reg. No. 303690

Jane N. Bowman
Attorney, Reg. No. 388598

Foreclosure Relief Law Project
A Program of the Housing Preservation
Project
570 Asbury Street, Suite 105
St. Paul, Minnesota 55104
651.642.0102 x 117
Fax 651.642.0051

**ATTORNEYS FOR PLAINTIFFS**

22

OFFICE OF THE COUNTY RECORDER
STEARNS COUNTY, MINNESOTA

Document # **1267758**

Certified, Filed, and/or Recorded on

09-10-2008   at   10:00 AM

DIANE GRUNDHOEFER
STEARNS COUNTY RECORDER



## ASSIGNMENT OF MORTGAGE

Date: August 11, 2008

FOR VALUABLE CONSIDERATION, Argent Mortgage Company, LLC, a corporation
under the laws of Delaware, Assignor, hereby sells, assigns and transfers to U.S. Bank National
Association, as trustee for the Certificateholders CitiGroup Mortgage Loan Trust Inc.
Asset-backed Pass-Through Certificates Series 2007-AMC1 c/o Countrywide Home
Loans, Inc. 400 Countrywide Way Simi Valley, CA 93065, Assignee, the Assignor's interest
in the Mortgage dated September 5, 2006 executed by Steven A Gewecke and Tamara L
Gewecke, husband and wife, as Mortgagors, to Argent Mortgage Company, LLC, as
Mortgagee, DATE AND PLACE OF RECORDING: Recorded September 14, 2006,
Stearns County Recorder, Document No. 1206280. Stearns County, Minnesota, together
with all right and interest in the note and obligation therein specified and the debt thereby
secured.

ASSIGNOR: Argent Mortgage Company,
LLC

By: _____

Its: _____

STATE OF )
)ss.
COUNTY OF )

This instrument was acknowledged before me on ____AUG 1 9 2008____, 2008, by
_____, the _____, of Argent Mortgage
Company, LLC, a corporation under the laws of Delaware, on behalf of the corporation.

_____
Notary Public

THIS INSTRUMENT WAS DRAFTED BY:
PETERSON, FRAM & BERGMAN, P.A.
55 East Fifth Street, Suite 800
St Paul MN 55101-1197
PF&B file: 16751-082675

JESSICA VILLA
My Commission Expires
February 20, 2012



SCR __1__ of __1__