UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Steven Gewecke, and Tamara
Gewecke,

      Plaintiffs,

  vs.

U.S. Bank, N.A., as trustee for
CitiGroup Mortgage Loan Trust
2007-AMC1; CitiGroup Mortgage
Loan Trust 2007-AMC1; Argent
Mortgage Company, LLC; ACC
Capital Holdings Corporation; and
Countrywide Home Loans, Inc.,

      Defendants.     Civ. No. 09-1890 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion to Dismiss of the Defendants Argent Mortgage Company, LLC, and ACC Capital Holdings Corporation ("Argent"), and

the Motion for Partial Summary Judgment of the Plaintiffs against both Argent, and the Defendant Countrywide Home Loans, Inc. ("Countrywide").

A Hearing on the Motions was conducted on February 9, 2010, at which time, the Plaintiffs appeared by Jane N. Bowman, Esq.; Argent appeared by Britta Schnoor Loftus, Esq.; and the Defendants U.S. Bank, N.A., as trustee for CitiGroup Mortgage Loan Trust 20017-AMC1, CitiGroup Mortgage Loan Trust 2007-AMC1, and Countrywide (jointly, the "Countrywide Defendants"), appeared by Jared M. Goerlitz, Esq.

For reasons which follow, we recommend that Argent's Motion to Dismiss be granted in part, and that the Plaintiffs' Motion for Partial Summary Judgment be denied as to Argent, and be granted as to Countrywide.

## II.  Factual and Procedural Background

The Plaintiffs obtained a refinancing home loan from Argent, on or about June 7, 2005.  Subsequently, on or about September 5, 2006, the Plaintiffs refinanced with Argent a second time, and that loan was secured by a mortgage on the Plaintiffs' primary residence.  At the closing on September 5, the Plaintiffs received notice of their right to cancel that transaction.  The Notice of Right to Cancel, which was signed by the Plaintiffs, states in pertinent part:

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. **You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS** from whichever of the following events occurs last:

1. The date of the transaction which is [09/05/2006];

2. The date you received you Truth in Lending disclosures; or

3. The date you received this notice of your right to cancel.

**If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.**

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

HOW TO CANCEL

**If you decide to cancel this transaction**, you may do so by
notifying us in writing * * *.  You may use any written
statement that is signed and dated by you and states your
intention to cancel, or you may use this notice by dating
and signing below. * * *.

<u>Affidavit of Britta Schnoor Loftus, Exhibit A, Docket No. 38-1</u>, at p. 1 of 2 [emphasis
added]; see also, <u>Affidavit of Steven Gewecke, Exhibit C, Docket No. 33-3</u>.

The foregoing Notice is a requirement of the Truth in Lending Act, Title 15 U.S.C.

§1635(a)("TILA"), which mandates that the lender -- here, Argent -- must clearly and

conspicuously disclose, to consumers -- here, the Plaintiffs -- their rescission rights.

In order to assist in that notification process, the Federal Reserve Board (the

"Board") has promulgated Regulation Z, which includes a series of Model Forms for

a variety of consumer credit transactions.  See, <u>12 C.F.R. §226, Appx. H</u>.  The TILA

allows the lender to advise consumers of their rescission rights by employing "the

appropriate form of written notice published and adopted by the Board, or a

comparable written notice of the rights of the obligor." <u>Title 15 U.S.C. §1635(h)</u>.  As

the means of implementing the TILA, Regulation Z provides as follows:  "To satisfy

the disclosure requirement * * * the creditor shall provide the appropriate model form

in Appendix H of this part or a substantially similar notice." <u>12 C.F.R. §226.23(b)(2)</u>.

The TILA, however, makes plain that the use of a particular Model Form is not

mandatory. See, Title 15 U.S.C. §1604(b)("[N]othing in this subchapter may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section.").

There is no dispute that, with respect to the refinancing on September 5, 2006, Argent provided the Plaintiffs with a copy of Model Form H-8, which we have quoted above. The Plaintiffs argue, and Argent concedes, that the Plaintiffs should have been provided with a copy of Model Form H-9, which applies to refinancing transactions, and which provides, in pertinent part, as follows:

> You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. **You have a legal right under federal law to cancel this new transaction, without cost, within three business days** from whichever of the following events occurs last:
>
> > (1)     the date of this new transaction, which is _____; or
> >
> > (2)     the date you received your new Truth in Lending disclosures; or
> >
> > (3)     the date you received this notice of your right to cancel.
>
> **If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after**

**we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.**

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

If we do not take possession of the money within 20 calendar days of you offer, you may keep it without further obligation.

HOW TO CANCEL

**If you decide to cancel this new transaction**, you may do so by notifying us in writing* * *.

You may use any written statement that is signed and dated by you and that states you intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights. * * *

12 C.F.R. Part 226, Appendix H, Model Form H-9 [emphasis added]; see also, Affidavit of Mark Ireland, Exhibit B, Docket No. 34-2.

Nearly two and one half (2½) years later, and in the face of an imminent foreclosure,

which arose from the Plaintiffs' failure to make payments on their mortgage loan, the

Plaintiffs sent a Notice of Rescission of the refinancing mortgage loan to Argent. Argent rejected the Plaintiffs' attempt to rescind as untimely.

The Plaintiffs contend that they are entitled to rescind the refinancing mortgage transaction because Argent employed the wrong Model Form, while Argent contends that the Plaintiffs were provided adequate notice of their right to rescind the transaction, even though the wrong Model Form was utilized for that purpose. The Plaintiffs' Motion for Partial Summary Judgment as to Argent is the obverse side of Argent's Motion to Dismiss.

As to the Plaintiffs' Motion for Partial Summary Judgment against Countrywide, they allege that Countrywide failed to respond, within twenty (20) business days, to a qualified written request, pursuant to the Real Estate Settlement Procedures Act, Title 12 U.S.C. §2605(e)(1)(A), and Regulation X, 24 C.F.R. §3500.21(e)(1) ("RESPA"), and failed to honor their obligations under Minnesota Statutes Section 47.205, Subdivision 2(3). According to the Plaintiffs, their legal counsel sent a qualified written request to Countrywide on April 10, 2009, consistent with their rights under RESPA, which "satisfie[d] all of the statutory and agency requirements for a proper qualified written request." Plaintiffs' Memorandum in Support, Docket No. 32, at pp. 15 and 16 of 18. Specifically, the Plaintiffs assert that

"[t]he qualified written request specifically ask[ed] for information related to the amounts received by Countrywide, charged by Countrywide, and an accounting of [the Plaintiffs'] escrow account." Id. at p. 17 of 18. Nonetheless, the Plaintiffs maintain that Countrywide failed to respond to their request.

In addition, the Plaintiffs urge that Countrywide also violated the directives of Minnesota law, which provide as follows:

> If the servicing of mortgage loans financing one-to-four family owner occupied residences located in this state is sold or assigned to another person:
>
> (3)    the purchasing lender shall respond within 15 business days to a written request for information from a mortgagor. A written response must include the telephone number of the company representative who can assist the mortgagor.

Minnesota Statutes Section 47.205, Subdivision 2(3).

The Plaintiffs contend that Countrywide is a purchasing lender because it had been assigned the servicing rights of the loan by the original lender, Argent, and, since Countrywide did not respond to the Plaintiffs' request for information within the designated fifteen (15) business days, Countrywide violated Minnesota law. Notably, as to both the RESPA, and the Minnesota statutory claim, the Plaintiffs do not seek

a full Summary Judgment, as any claimed damages, owing to those asserted violations by Countrywide, have not, as yet, been established.

For its part, Countrywide does not appear to dispute that it failed to timely respond to the Plaintiffs' requests for information under both RESPA, and the Minnesota Statute. Rather, Countrywide argues that a Partial Summary Judgment is inappropriate, as to the issue of liability, because RESPA, and the Minnesota Statute, require a showing of damages, actual or statutory, and because the Minnesota Statute excludes, from liability, the purchasing lender who uses reasonable care but, nonetheless, fails to timely respond to the request for information. Accordingly, Countrywide argues that, in the absence of further uncontested showings, including the ascertainment of any damage the Plaintiffs suffered, the Plaintiffs are not entitled to a Partial Summary Judgment.

### III. Discussion

A. <u>Standard of Review</u>. When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the Complaint and "construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th

Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004). All reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party. See, <u>Maki v. Allete, Inc.</u>, supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[1] <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998), cert denied, 525 U.S. 921; see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid

---

[1]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007)(the standard in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> Here, we apply the Supreme Court's "accepted pleading standard."

dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

Here, Argent makes a facial challenge to the Plaintiffs' First Amended Complaint, see, First Amended Complaint, Docket No. 22, thereby taking the facts alleged as true. See, Argent's Memorandum in Support of Motion, Docket No. 36, at p. 3 n. 2 of 23. As a consequence, we examine only the First Amended Complaint, any Exhibits attached to that Complaint, and any documents that are necessarily embraced by that Complaint, see, Ennervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004)("Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleadings."),

citing BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir. 2003), in our review of the sufficiency of the allegations contained therein.

As to the standard applicable to the Plaintiffs' Motion for Partial Summary Judgment, Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned

Parenthood of Minnesota/ South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e)(2) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Rule 56(e)(2), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

      B.    Legal Analysis. Apart from Argent's Motion to Dismiss the Plaintiffs' TILA claim, and the Plaintiffs' opposing Motion for Partial Summary Judgment on that same issue, we separately address the Motions for summary disposition, as they involve distinct issues of fact and law.

      1.    Argent's Motion to Dismiss the TILA claim, and the Plaintiffs' Motion for Partial Summary Judgment.

      The operative facts are not materially in dispute, and the ruling before us is dictated by the law. According to the Plaintiffs, Argent's substitution of Form H-8, for Form H-9, is not simply a technical failure under the TILA, as Form H-8 is not substantially similar to Form H-9 and, as a consequence of that substitution, Argent did not "clearly and conspicuously" disclose to the Plaintiffs the effects of a rescission. See, Plaintiffs' Reply Memorandum, Docket No. 48, at p. 3 of 12. The Plaintiffs heavily rely upon the Court of Appeals for the Seventh Circuit's decisions, in Hamm v. Ameriquest Mortgage Co., 506 F.3d 525, 529 (7th Cir. 2007), cert. denied,

552 U.S. 1280 (2008), and in <u>Handy v. Anchor Mortgage Corp.</u>, 464 F.3d 760, 764-65 (7th Cir. 2006). Strangely, the Plaintiffs characterize the holdings in each of those cases as espousing the "majority opinion," see, <u>Plaintiffs' Response Memorandum in Opposition, Docket No. 46</u>, at pp. 3 and 7 of 23, but they proffer no showing to support that characterization.

In <u>Hamm</u>, the plaintiff borrowers alleged that the defendant mortgage company had failed to state explicitly the payment period in the plaintiffs' TILA Disclosure Statements, and further violated TILA by including a one-week rescission right notice alongside the TILA-mandated three-day rescission notice. While acknowledging that the claimed violations were "technical," <u>Hamm v. Ameriquest Mortgage Co.</u>, supra at 529-30, the Seventh Circuit Court of Appeals found in favor of the plaintiffs, given that Circuit's insistence upon punctilious compliance with TILA's requirements. As the Court explained:

> We have held that, when it comes to TILA, "hypertechni-
> cality reigns." Handy [v. Anchor Mortgage Corp.,] 464
> F.3d [760,] 764 [(7th Cir. 2006)]. (This is not, we
> recognize, the formulation that some of our sister circuits
> use. See, Santos-Rodriguez v. Doral Mortgage Corp., 485
> F.3d 12, 17 n. 6 (1st Cir. 2007)(noting the difference
> between our standard and that of other circuits)). Our
> decision on the adequacy of Ameriquest's disclosure of the
> payment period depends on just how picky we think the

statute is. The Supreme Court has held that "[t]he concept of 'meaningful disclosure' that animates TILA * * * cannot be applied in the abstract. Meaningful disclosure does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure * * * and the need to avoid * * * [informational overload]." [Ford Motor Credit Co. v.] Milhollin, [444 U.S. 555,] 568 [(1980)](internal quotation marks and citations omitted). Following Milhollin's guidance, our approach means that when completeness of disclosure does not lead to informational overload, completeness must be required.

Id. at 529.

As a consequence, in the Seventh Circuit, hypertechnical violations of TILA "reign[]" and, as such, such technicalities permit the extended three-year rescission period.

In Handy, the defendant mortgage company provided the plaintiff borrower, at the time of her closing on a home loan, four copies of Form H-9 and one copy of Form H-8. Since two (2) different forms were given to the plaintiff, the plaintiff argued that the defendant had failed to clearly and conspicuously disclose her right to rescind the transaction. After a Bench Trial, the District Court ruled in favor of the defendant, reasoning that, if the plaintiff had wanted to rescind, and had looked at her closing documents, either of the Forms provided would have led her to rescind. See, Handy v. Anchor Mortgage Corp., supra at 762. The Court of Appeals for the Seventh Circuit reversed, explaining as follows:

- 16 -

Although we are sympathetic to the district court's common-sense observations that "had Mrs. Handy wanted to rescind and looked at her closing documents and found either of [the H-8 or H-9] forms, either one of them would have led her to rescind[]," we nevertheless conclude that Anchor's simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement, especially with regard to the "effects of rescission." TILA does not easily forgive technical errors. See Cowen v. Bank of United of Texas, FSB, 70 F.3d 930, 941 (7th Cir. 1995)(stating that "hyper-technicality reigns" in TILA cases). Even if Anchor is correct that a close parsing of Form H-9's "effects of rescission" statement might make it possible to reconcile it with the type of loan extended to Handy, the notice provided remains insufficient for Anchor to prevail. Where more than one reading of a rescission form is "plausible," the form does not provide the borrower with a clear notice of what her right to rescind entail[s]." Porter v. Mid-Penn Consumer Disc. Co., 961 F.2d 1066, 1077 (3rd Cir. 1992).

Id. at 764.

In its decision, the Court of Appeals does not specifically compare the language and terms of Form H-8, and contrast them to Form H-9, nor does the Court address the 1995 amendments to TILA, which appear to have been intended to end the "reign of hypertechnicality."[2] Rather, in holding that strict adherence to TILA is unbending, the

[2]See, e.g., In re Groat, 369 B.R. 413, 418 (8th Cir. BAP 2007)("Such an error [i.e., a typographical mistake] might have been fatal prior to 1995, but after Congress amended TILA '[m]ost courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice.'"), quoting Santos-
(continued...)

Court concluded, in effect, that any error is an unforgiving error, making the extended period of rescission necessarily mandatory.

In contrast to the Seventh Circuit, three separate Circuits have rejected the hypertechnical approach that <u>Hamm</u> and <u>Handy</u> evince, when those Courts were confronted with the same or similar circumstances that we face here.  In <u>Veale v. Citibank, FSB</u>, 85 F.3d 577, 580 (11th Cir. 1996), cert. denied, 529 U.S. 1198 (1997), the defendant mortgage company provided the plaintiff borrowers Form H-8 at the time of the loan closing, which did not "apply perfectly to the Veales' situation, because they already owed Citibank money and Citibank already had a mortgage on their home."  Notwithstanding that technical error, the Court concluded that no violation of TILA occurred, and therefore, that no extended period of rescission was warranted.  As the Court reasoned:

> However, TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights. See Rodash [v. AIB Mortgage Co.,] 16 F.3d [1142,] 1146 [(11th Cir. 1994)].

---

[2](...continued)
<u>Rodriguez v. Doral Mortgage Corp.</u>, 485 F.3d 12, 16 (1st Cir. 2007), and further quoting as follows:  "[T]he 1995 TILA amendments * * * were intended by Congress to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations.").

The H-8 form stated: "you have a legal right under federal law to cancel **this** transaction * * *. If you cancel the transaction, the (mortgage/lien/security interest) is also canceled." 12 C.F.R. Pt. 226, Appendix H (emphasis added). We hold that under these particular facts the H-8 form provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded. * * *

As we noted earlier, although the H-8 form does not apply perfectly to the Veales' situation, TILA does not require perfect notice; it requires a clear and conspicuous notice of rescission rights. See Rodash, 16 F.3d at 1146. We find the H-8 form to be reasonably clear when applied to the particular facts involved in this case; it provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded. Such meets the requirements of the law.

Id. at 580-81 [emphasis in original].

In reaching its result, the Court rejected the Third Circuit's decision in In re Porter, 961 F.2d 1066, 1076 (3rd Cir. 1992), where the Court had held that neither Form H-8 or Form H-9 provided the borrower clear notice of her partial rescission rights. While not addressed by the Court, in Veale, Porter predated the 1995 TILA amendments, and "was informed by its understanding of TILA as creating 'a system of strict liability in favor of the consumers when mandated disclosures have not been made.'" McKenna v. First Horizon Home Loan Corp., 537 F. Supp.2d 284, 290 (D. Mass. 2008), quoting In re Porter, supra at 1078.

Similarly, in <u>Santos-Rodriguez v. Doral Mortgage Corp.</u>, 485 F.3d 12 (1st Cir. 2007), in the context of a mortgage refinancing transaction, the defendant mortgage company provided the plaintiff borrower with Form H-8, as did Argent here, even though Form H-9 applied to refinancing transactions. The plaintiffs argued that the provision of the mistaken form had denied them clear and conspicuous notice of their right to rescind, and they sought to have the period of rescission extended to three (3) years as a result. As have the Plaintiffs, here, the borrowers in <u>Santos-Rodriguez</u> urged as follows:

> They assert that Doral's use of a form patterned on Model Form H-8 rather than on H-9 significantly misled them as to their rescission rights, because the effects of rescinding a same-lender refinance loan are different from the effects of rescinding an original loan. In particular, plaintiffs highlight that the form they received failed to disclose that if a same-lender refinancing loan is rescinded, the original loan is not cancelled, meaning that the lender retains a security interest in the property under the original loan, and the consumer reverts to paying off the original loan. Plaintiffs argue that a consumer would be less willing to
>
> rescind a same-lender refinance loan if he believed that as a result he would also have to repay the original mortgage.

<u>Id.</u> at 16.

In rejecting the borrowers' argument, the Court explained:

Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice. See, e.g., Veale v. Citibank, 85 F.3d 577, 581 (11th Cir. 1996), cert. denied, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997)("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights."); Smith v. Chapman, 614 F.2d 968, 972 (5th Cir. 1980)("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."); Dixon v. D.H. Holmes Co., 566 F.2d 571, 573 (5th Cir. 1978) ("The question is not whether [notice provided under the TILA] is capable of semantic improvement but whether it contains a substantial and accurate disclosure * * *."); see also Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)("**Meaningful** disclosure [under the TILA] does not mean **more** disclosure. Rather it describes a balance between competing considerations of complete disclosure * * * and the need to avoid * * * [information overload].")(internal quotation and citation omitted)(emphasis in original). As this court has recently said, the 1995 TILA amendments, see Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, 109 Stat. 271, 272-73, were intended by Congress to "provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." McKenna [v. First Horizon Home Loan Corp.,] 475 F.3d [418,] 424 [(1st Cir. 2007)].

Id. at 16-17 [emphasis in original].

As a result, the Court recognized its obligation to examine the language of Form H-8 in order to determine whether that notification met TILA's clear and convincing

notice requirements. The Court concluded that, "from the vantage point of the hypothetical average consumer, see Palmer [v. Champion Mortgage, 465 F.3d [24,] 28 [(1st Cir. 2006)], * * * because plaintiffs were told, clearly and conspicuously, that rescission would only operate as to their pending refinance transaction, any conclusions that they might have drawn from that disclosure about their previously existing mortgages were unreasonable (and, thus, not a valid basis for any TILA claim)." Id. at 18.

The third Circuit to weigh-in on the issue that we now confront was the Sixth Circuit, in Mills v. EquiCredit Corp., 172 Fed.Appx. 652, 656 (6th Cir. 2006). There, the defendant mortgage company also provided the plaintiff borrowers with the wrong disclosure form for a refinancing loan transaction. Nevertheless, the District Court found no TILA violation, and that finding was affirmed on appeal. As the Court of Appeals explained:

> The Appellants do not allege that EquiCredit failed to notify them of their right to rescind or that EquiCredit failed to make other required TILA disclosures. Instead, they conclude that EquiCredit's use of the incorrect form "constitut[ed] a material mis-disclosure which trigger[ed] their] extended right of rescission." * * * Appellants equate the use of the incorrect form with the failure to notify them of their right to rescind. But as the district court noted in its order granting EquiCredit's motion to dismiss, "[i]t is

undisputed that Plaintiffs signed forms titled 'Notice of Right to Cancel,' which notified Plaintiffs that they had three days to cancel their loan agreements with Defendants." The district court, assuming that the form used by EquiCredit was technically incorrect, held that the form nonetheless informed Appellants of their right to cancel the loan transaction. Although the standard for Rule 12(b)(6) dismissals is quite liberal, Appellants failed to plead facts that established their right to rescind the February 29, 2000 transaction beyond the three-day rescission period; therefore, the district court's dismissal of their TILA claim was proper.

Id. at 656-57.

Accordingly, amongst the Circuits, it appears that the majority rule is contra to the hypertechnical application of TILA that is followed in the Seventh Circuit.

Numerous Courts, including one from this District, have followed the holdings in Veale, Santos-Rodriguez, and Mills, insofar as they reject the Seventh Circuit's strict liability approach to claimed violations of the TILA. For example, in Peterson-Price v. U.S. Bank National Ass'n, 2010 WL 1782188 (D. Minn., May 4, 2010), the District Court considered whether the simultaneous provision of two (2) different statements, at the time of a mortgage closing, which identified two (2) different annual interest percentage rates ("APRs"), violated the TILA, and thereby extended the rescission period to three (3) years. The defendant banks denied any TILA violation, owing to the conflicting statements, because the plaintiff borrower received clear and

conspicuous notice of her APR, because other documents, that she received at the closing, should have resolved any potential confusion. Both sides moved for Summary Judgment on the TILA claim, with the plaintiff relying on Seventh Circuit authority so as to impose strict liability under the TILA.

In rejecting the plaintiff's Motion for Summary Judgment, the Court explained as follows:

> The Seventh Circuit's formulation of the objective, clear and conspicuous standard requires strict compliance and "does not forgive technical errors." Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006). The Seventh Circuit explicitly chose to depart from the law in other circuits, see Hamm v. Ameriquest Mortgage Co., 506 F.3d 525, 529 (7th Cir. 2007), which holds that the clear and conspicuous standard does not require perfect compliance. See Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12, 16 (1st Cir. 2007)("Most courts have concluded that TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice."); Veale v. Citibank, 85 F.3d 577, 581 (11th Cir. 1996)("TILA does not require perfect notice; rather it requires a clear and conspicuous notice * * *."); Smith v. Chapman, 614 F.2d 968, 972 (5th Cir. 1980)("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in [TILA], there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."). At least one court within the Eighth Circuit has followed the less rigid formulation, specifically relying on the First Circuit's decision in

Santos-Rodriguez.  See In re Groat, 369 B.R. 413, 417 (8th Cir. BAP 2007).

Id. at *5.

The Court went on to hold as follows:

> The Court finds persuasive the rationale for adopting the First Circuit formulation of the clear and conspicuous standard.  As other courts have aptly recognized, such an approach is consistent with Congressional intent:
>
>> Congress passed the Truth in Lending Act Amendments of 1995 to set "higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." * * * The current statutory language, as amended in 1995, is aimed at preventing creditors from facing overwhelming and "draconian" liability (rescission) for relatively minor violations * * *.  These measures are necessary to prevent a "financial disaster in the mortgage industry[.]" * * * The average consumer test adopted by the First Circuit provides a higher tolerance level for non-confusing technical mistakes in disclosures to consumers, just as Congress intended.
>
> King v. Long Beach Mortgage Co., 672 F. Supp.2d 238, 249 (D. Mass. 2009).

> The documents provided to Plaintiff at the closing (the seemingly inconsistent APR statements and the multiple mortgage documents), when read together as a whole and in view of the appropriate objective standard, may or may not cause a jury to find an average consumer would have been confused regarding the APR applicable to the mort-

> gage loan. Accordingly, whether Trimark violated TILA by failing to clearly and conspicuously disclose the APR cannot be resolved on summary judgment. See id. at 249-50 ("Ordinarily, whether TILA disclosures are confusing to the average consumer is a question of fact for the fact-finder.").

Id. at *6.

Other Courts have found no Jury issue, which would preclude a summary disposition, when they confronted the very same circumstances that we confront here.

Most recently, in <u>Larrabee v. Bank of America, N.A.</u>, --- F. Supp.2d ---, 2010 WL 2089260 (E.D. Va., May 20, 2010), the Court considered whether the transmittal of the wrong notice of rescission form, in the context of a refinancing transaction, violated TILA and, following the analysis in <u>Santos-Rodriguez v. Doral Mortgage Corp.</u>, supra, concluded that, even if the wrong form had been provided, "its contents disclosed all the information required under Regulation Z." <u>Id.</u> at *7. The Court went on to explain:

> The form clearly and conspicuously apprised Plaintiff of her rights to rescind. An objective, ordinary consumer reading the notice of rescission form sent to Plaintiff would construe it as applying to this transaction only. Although perhaps imperfect, the notice provided her with all the information that TILA requires.

<u>Id.</u>

While the Court concluded, owing to circumstances not at play here, that dismissal was not appropriate in <u>Larrabee</u>, and that, in actuality, the right form had been provided to the plaintiff, as different lenders had been involved, even though the original lender immediately transferred the loan to the plaintiff's "new" lender.[3] Nonetheless, the Court concluded that, even if the incorrect form had been employed, there would have been no TILA violation, as the notice provided on the incorrect form clearly and conspicuously informed the plaintiff of her right to rescind.

Other decisions have also concluded that the employment of Form H-8 in a refinancing transaction, rather than Form H-9, did not violate TILA.  See, <u>McKenna v. First Horizon Home Loan Corp.</u>, 537 F. Supp.2d 284, 289-91 (D. Mass. 2008)(concluding that a notice of rescission rights which amalgamated Form H-8, with Form H-9, provided clear and conspicuous notice, and did not violate TILA); <u>Vermurlen v. Ameriquest Mortgage Co.</u>, 2007 WL 2963637 at *3-4 (W.D. Mich., October 9,

---

[3]We are not convinced, as the Court in <u>Larrabee</u> appeared to be, that the 2007 transaction was not a refinancing, as the "new" lender was the same as the lender who held the mortgage on the plaintiffs' property originally, albeit by an immediate assignment from the original lender.  See, <u>Larrabee v. Bank of America, N.A.</u>, --- F. Supp.2d ---, 2010 WL 2089260 at *7 (E.D. Va., May 20, 2010).  In this instance, however, the issue need not be definitively resolved, as the Court, in <u>Larrabee</u>, concluded that, even if it were a refinancing transaction, the notice employed by the lender was clear and conspicuous.  <u>Id.</u>

2007)(finding that the provision of Form H-8, with respect to a refinancing transaction, did not violate TILA, as the notice of rescission, that was contained in that form, clearly and conspicuously informed the borrowers of their rescission rights);[4] Barrett v. Bank One, N.A., 511 F. Supp.2d 836, 839-41 (E.D. Ky. 2007)(concluding that the substitution of Form H-8, for Form H-9, in a refinancing transaction did not violate TILA's requirement for the provision of a clear and conspicuous notice of the borrowers' right to rescind).

Of course, we understand that there are other cases which hold to the contrary. As the Plaintiffs underscore, in 2003, a Bankruptcy Court in this District, in the form of a ruling from the Bench, concluded that Form H-8 was not substantially similar to Form H-9, and granted Partial Summary Judgment to the plaintiff borrowers on that basis. See, Lloyd M. Nack and Marianne B. Nack v. Ameriquest Mortgage Co., File No. ADV 03-4176, Affidavit of Mark Ireland, Docket No. 34-6, at pp. 7-10. While acknowledging that "[t]here [was]n't much case law on this subject," id. at p. 8, the

---

[4]Shortly after the Court granted the defendant Summary Judgment on the plaintiffs' TILA claim, the Court, in Vermulen, considered a Motion to Reconsider, and a Motion to Stay the proceedings, pending a ruling on whether the case should be treated as a "tag along action" in a Multi-District Litigation action in the Northern District of Illinois. See, Vermurlen v. Ameriquest Mortgage Co., 2007 WL 3104339 (W.D. Mich., October 22, 2007). Neither Motion -- both of which were granted -- impacted the Court's earlier ruling on Summary Judgment.

Court cited to <u>Gibbons v. Interbank Funding Group</u>, 208 F.R.D. 278, 282 (N.Cal. 2002), and <u>In re Porter</u>, supra, and recognized that the latter case was decided before the 1995 amendments to TILA. Ultimately, the Court concluded "that the form that was provided to the Debtors did not clearly and conspicuously disclose the facts and the circumstances under which the Debtors could rescind this refinancing transaction," <u>id.</u> at p. 9, and that, because "[t]echnical violations of TILA are enforceable," <u>id.</u>, the plaintiffs/Debtors, there, were entitled to Partial Summary Judgment, and were entitled to rescind their loan transaction.

In addition, the Plaintiffs cite to <u>Rand Corporation v. Yer Song Moua</u>, 559 F.3d 842 (8th Cir. 2009), for the proposition that the TILA, and Regulation Z, are remedial legislative measures, to be broadly construed in favor of consumers. See, <u>Plaintiffs' Memorandum in Opposition, Docket No. 46</u>, at p. 7 of 23, quoting <u>Rand Corporation v. Yer Song Moua</u>, supra at 845-46. In <u>Moua</u>, the defendant borrowers received both a Notice of Post-Transaction Rescission rights, which correctly advised them that they had three (3) days after the transaction in which to rescind the loan, and also received a Confirmation which provided that "[m]ore than 3 business days have elapsed since the date of the new transaction," <u>Rand Corporation v. Yer Song Moua</u>, supra at 846, and which was executed by the defendant borrowers on the same day that the

transaction closed. The defendant borrowers argued that they were confused as to their right of rescission, because they were obligated to sign, at the time of the closing, a document which falsely stated that the new loan transaction had not been rescinded, even though there were three (3) days, after the closing, in which they could consider rescinding the loan.

The Court found the conflicting notices to be confusing, observing as follows:

> On April 22, 2005, the Mouas were asked to sign a statement acknowledging they had been advised of their right to rescind the loan transaction within three business days or no later than midnight April 26, 2005. At the same time, they were instructed to sign a statement certifying that three business days had elapsed and they had not rescinded the transaction. Requiring borrowers to sign statements which are contradictory and demonstrably false is a paradigm for confusion. The Mouas signed a statement on April 22, 2005, certifying that it was April 26, 2005. The average borrower would be confused when instructed to certify a falsehood, and as to the effect of the effect of the falsehood.

Id. at 847.

Based upon Moua, the Plaintiffs argue that, "[i]f the Eighth Circuit wanted to follow the path of the Eleventh and First Circuit Courts, the Eighth Circuit Court of Appeals could have done so in Moua," Plaintiffs' Memorandum in Opposition, Docket No. 46, at p. 8 of 23, while Argent contends that the "Plaintiffs' reliance on [Rand] is misplaced." Argent's Reply Memorandum, Docket No. 50, at p. 7 n. 3 of 18.

Having closely reviewed the authorities that the parties have cited, and that we have identified through our independent research, we find persuasive, as did the Court in Peterson-Price v. U.S. Bank National Ass'n, supra at *6, "the rationale for adopting the First Circuit formulation of the clear and conspicuous standard." The cases from the Seventh Circuit, upon which the Plaintiffs rely, do not so much as mention the 1995 amendments to the TILA, which were intended to "reduce, not increase, lender liability for minor violations." Santos-Rodriguez v. Doral Mortgage Corp., supra at 19 n. 10; see also, McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 424 (1st Cir. 2007), quoting 141 Cong. Rec. S14566, 14567[statement of Sen. D'Amato]("In taking this step [i.e., amending TILA in 1995], Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations," and "[a] key provision of the legislation expressed an awareness, acknowledged by others during the floor debate, that the 'threat of wholesale rescissions present[s] a real danger to our modern system of home financing.'").

The First, Eleventh, and Sixth Circuits, give recognition, and effect, to the Congressional intent underlying the 1995 amendments. Moreover, the bright-line, strict liability approach, that has been adopted by the Seventh Circuit, certainly favors

ease of application for, apparently, most any deviation from the Model Forms, which were promulgated by the Federal Reserve Board, results in an automatic extension of the rescission deadline for a period of three (3) years. Of course, TILA, itself, expressly disclaims any requirement that a particular Model Form should be employed for any particular purpose. See, <u>Santos-Rodriguez v. Doral Mortgage Corp.</u>, supra at 15 ("[T]he TILA plainly states that use of the model forms is not obligatory."), citing, and quoting, <u>Title 15 U.S.C. §1604(b)</u>("Nothing in this sub-chapter may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section."). TILA plainly permits a lender to inform consumers of their rescission rights by using "the appropriate form of written notice published and adopted by the [Federal Reserve] Board, or a comparable written notice of the rights of the obligor," <u>Title 15 U.S.C. §1635(h)</u>, and Regulation Z follows suit. See, <u>12 C.F.R. §226.23(b) (2)</u>("To satisfy the disclosure requirement * * * the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice.").

Nonetheless, <u>Hamm</u>, and <u>Handy</u>, do not examine the applicable language of the forms being contested, but simply underscore that the wrong Model Form had been provided to the borrowers. The opinions are bereft of any explanation as to how,

under the applicable circumstances, the language of the form was neither clear nor conspicuous to an average borrower, on any objective basis. Nor do we find the other decisions, upon which the Plaintiffs rely, to be persuasive. <u>Rand Corporation v. Yer Song Moua</u>, supra, is abjectly inapposite to the circumstances that we confront here. There, the defendant borrowers were importuned to sign a patently false Confirmation which conflicted with the three-day period, allowed by TILA, for the cancellation of a loan transaction.

While the Plaintiffs suggest that <u>Moua</u> is in conflict with First and Eleventh Circuit precedent, we fail to see how that follows from the Court's fact-based ruling. Plainly, the Model Forms do not combine a Notice of Rescission, with a contemporaneous Confirmation, which certifies that, on the same day as the transaction was consummated, the borrowers purported to reject any rescission some three (3) days later. As a consequence, had the Eighth Circuit Court of Appeals followed the strict liability approach of the Seventh Circuit, then the Court would have had no need to so carefully explain why it found the notice given to be in violation of TILA's clear and conspicuous disclosure requirements.

Similarly, the Plaintiffs can find little support in either <u>In re Porter</u>, supra, or <u>Semar v. Platte Valley Federal Savings and Loan Ass'n</u>, 791 F.2d 699, 704 (9th Cir.

1986). See, <u>Plaintiffs' Memorandum in Support of Partial Summary Judgment, Docket No. 32</u>, pages 6 and 9 of 18. Both cases are dated, and preceded the 1995 amendments to TILA, leading one Court to observe, as to <u>Semar</u>, that the case is "now elderly and may be in tension with later TILA amendments." <u>Melfi v. WMC Mortgage Corp.</u>,568 F.3d 309, 312 (1st Cir.2009), cert. denied, --- U.S. ----, 130 S.Ct. 1058 (2010); see also, <u>Peterson-Price v. U.S. Bank National Ass'n</u>, supra at *6 (same). Each decision also is the product of the view, held by several Courts at that time, that any violation of TILA, no matter how technical, would require an extension of the rescission deadline. The same may be said of the Bankruptcy Court's decision in <u>Lloyd M. Nack and Marianne B. Nack v. Ameriquest Mortgage Co.</u>, supra, which relied upon <u>In re Porter</u>, and <u>Gibbons v. Interbank Funding Group</u>, supra, that, in turn, relied upon <u>In re Porter</u>, and <u>Semar</u>. See, <u>Gibbons v. Interbank Funding Group</u>, supra at 282-83. Moreover, a Court superior to the Bankruptcy Court in <u>Nack</u>, has adopted the approach espoused by <u>Santos-Rodriquez v. Doral Mortgage Corp.</u>, supra. See, <u>In re Groat</u>, supra at 417-18, and n. 17.

As a result, having found sound reason to reject the strict liability approach that was adopted by the Seventh Circuit, we are obligated to examine the language of Form H-8, and of Form H-9, in order to determine whether the Form H-8, which was

provided to the Plaintiffs by Argent, clearly and conspicuously provided the Plaintiffs with notice of the right to rescind their loan in accordance with TILA. We agree with the Circuit Courts in <u>Veale</u>, <u>Mills</u>, and <u>Santos-Rodriguez</u>, that, while Form H-8 is not perfect for a refinancing transaction, the Form sufficiently informed the Plaintiffs that any rescission would only affect the refinancing transaction -- which is all that is required by TILA, and Regulation Z.

As we have previously explained, TILA requires lenders to "clearly and conspicuously disclose" the borrowers' rescission rights. See, <u>Title 15 U.S.C. §1635(a)</u>. TILA's rescission disclosure requirements are more fully elaborated in Regulation Z, which details the five (5) elements of a clear and conspicuous disclosure as follows:

> The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i)     The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii)    The consumer's right to rescind the transaction.
>
> (iii)   How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv)    The effects of rescission, as described in paragraph (d) of this section.

(v)    The date the rescission period expires.
12 C.F.R. §226.23(b)(1).

As we have noted, the only element that is in contest, here, is item number four (4), which relates to the effects of rescission.

The fourth element expressly references 12 C.F.R. §226.23(d), which details several effects of rescission, that must be disclosed to the consumer/borrower, as follows:

(1)    When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2)    Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3)    If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section, when the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.

Here, the Plaintiffs do not contend, nor can they, given the language of the Notice of

Rescission provided to them by Argent, that any of the disclosures, that are required

by Section 226.23(d), were missing from that Notice.

Rather, they argue that, unlike a standard provision in Form H-9, the Form H-8

that they received did not include the following advisory:

> If you cancel this new transaction, it will not affect any
> amount that you presently owe.  Your home is the security
> for that amount.  Within 20 calendar days after we receive
> your notice of cancellation of this new transaction, we must
> take the steps necessary to reflect the fact that your home
> does not secure the increase of credit.

12 C.F.R. §226.23, Appendix H-9.

While the Plaintiffs' argument is correct -- they were not specifically advised of that

right, in that language -- they were provided a substantially similar advisory.

Specifically, the Plaintiffs were informed, as we have previously noted, as follows:

> If you cancel the transaction, the mortgage/lien/security
> interest is also cancelled.  Within 20 CALENDAR DAYS
> after we receive your notice, we must take the steps
> necessary to reflect the fact that the mortgage/lien/security
> interest on your home has been cancelled, and we must
> return to you any money or property you have given to us
> or anyone else in connection with **this transaction**.

Affidavit of Britta Schnoor Loftus, Exhibit A, Docket No. 38-1 [emphasis added].

Further, the Notice, that the Plaintiffs received, also stated, in the "How to Cancel" section that, "[i]f you cancel **this transaction**," id., they could do so in specific ways and during a specific time.

Every Circuit Court, which has considered the same argument as that advanced by the Plaintiffs, has rejected the argument as without merit.  See, Veale v. Citibank, F.S.B., supra at 581 ("We find the H-8 form to be reasonably clear when applied to the particular facts involved in this case; it provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded."); Santos-Rodriguez v. Doral Mortgage Corp., supra at 17 ("We conclude that Doral met its disclosure obligations," since "[t]he form plaintiffs received explained, among other things, that (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind 'this transaction,' without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled," and therefore, "[b]ecause the form clearly stated that rescission was available only as to 'this transaction,' Doral clearly and conspicuously informed plaintiffs that any rescission would only operate as to the current refinancing transaction.").

We find nothing reasonable in the Plaintiffs' construction of the Notice of Right to Cancel that they received from Argent. Taken literally, the Plaintiffs argue that an objective borrower, reading the terms of the Notice, would have reasonably believed that he or she could rescind the refinancing transaction -- so it would have no consequence to him or her -- and thereby, also be freed of the security interest that the same creditor held in his property before the refinancing, and without any financial detriment to him or her. The Plaintiffs do not explain how they could have reasonably believed, on any objective basis, that, had they rescinded the refinancing transaction -- that is, undertaken a non-act, as no legal rights had changed -- they would then be freed of their original mortgage, that had been in place since June of 2005. Simply stated, Form H-8 contains no language which would induce a mortgagor to believe, on any objectively reasonable basis, that he could feign interest in a refinancing, sign all the papers, and then cancel the refinancing within three (3) business days, and be freed of both his refinancing and his original mortgages. See, Palmer v. Champion Mortgage, 465 F.3d 24, 28 (1st Cir. 2006)[citations omitted] ("This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer -- a consumer who is

neither particularly sophisticated nor particularly dense."). There is nothing

objectively reasonable in such a construction of Form H-8.

As the Court further explained, in Santos-Rodriguez v. Doral Mortgage Corp.,

supra at 17-18:

> Doral's disclosure form informed plaintiffs that, "If you cancel the transaction, the mortgage, lien or security interest is also cancelled." This statement fulfilled the regulatory requirement that the lender disclose that, upon rescission of the current transaction "the security interest giving rise to the right of rescission become void." 12 C.F.R. §226.23(d)(1). Contrary to plaintiffs' assertion, this disclosure is accurate even in same-lender refinance transactions such as those at issue here, because rescission of a refinance transaction does indeed cancel the entire security interest contemplated by the refinance agreement. In addition, rescission of the refinance transaction does not impact the lender's security interest under the original loan, which is held in abeyance until the rescission period has expired. See 12 C.F.R. §226.23(c)("Unless a consumer waives the right of rescission * * * no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.").

Simply stated, the undertaking of a non-act, by virtue of the rescission, could not

vitiate prior, properly contracted security interests, and no objectively reasonable

borrower could have believed that it would.

In sum, "because [Argent's] rescission disclosure correctly stated that the rescission of the refinance loan would cancel the security interest contemplated by that loan, and would impact only the refinance transaction, it satisfactorily disclosed the effects of rescission required by 12 C.F.R. §226.23(d)," id. at 18, and therefore, Argent's Motion to Dismiss should be granted, and the Plaintiffs' Motion for Partial Summary Judgment, on that same ground, should be denied.

    2.    <u>Argent's Motion to Dismiss Counts III, IV, V, and VII, of the Plaintiffs' Amended Complaint as to Argent, on the Ground that Argent is not a Proper Party to those Counts</u>.

Although the Plaintiffs do not expressly name Argent in Counts III, IV, V, and VII, of their First Amended Complaint, Argent argues that it is not a proper party to those Counts, which seek declaratory, injunctive, and monetary relief, and therefore, Argent asks to be dismissed as to those Counts. The Plaintiffs oppose that Motion, and argue that Argent is a joint venturer with the other Defendants, and therefore, could be held liable under Counts III, IV, V, and VII. Alternatively, the Plaintiffs contend that Argent is a necessary party, under Rule 19(a), Federal Rules of Civil Procedure, with respect to those Counts, and should not be dismissed on that basis as well. We find that the issues presented are so fact-intensive that they elude a Motion to Dismiss.

In paragraphs 79 though 87 of the Plaintiffs' Amended Complaint, see, <u>First Amended Complaint, Docket No. 22</u>, pp. 15 and 16 of 31, the Plaintiffs allege that the Defendants were engaged in a joint venture, involving the origination of mortgage loans, the pooling of those loans, and the securitization of the loans, all under the aegis of a Pooling and Servicing Agreement. Argent contends that no joint venture could have been formed, under Minnesota law, but we are ill-positioned to assess the strength of that argument, especially when the facts, which would undermine the contention that a joint venture had been formed amongst the Defendants, are not available in the Record presented. As but one example, the Plaintiffs assert that "[t]he existence of a Pooling and Servicing Agreement is enough to survive a motion to dismiss, because the contract terms of such an Agreement are prima facie evidence of a joint venture," <u>Plaintiffs' Response Memorandum in Opposition, Docket No. 46</u>, at p. 11 of 23, but the Pooling and Servicing Agreement is not in the Record before us.

While we think it a stretch to assert, as the Plaintiffs do here, that Argent, which had nothing directly to do with the proceedings to foreclose on the Plaintiffs' mortgage, could be liable under Counts III, IV, and V, we cannot conclude that the Plaintiffs should be deprived of attempting to prove that liability through the mechanism of a joint venture, through some form of conspiracy, or a legal claim of

"aiding and abetting." See, <u>Plaintiffs' Response Memorandum in Opposition, Docket No. 46</u>, at p. 14 of 23; see also, <u>First Amended Complaint, Docket No. 22</u>, at p. 26 ¶134 of 31. Whether Counts III, IV, V, and VII, are subject to summary disposition, under Rule 56, must await another day, but we find no basis to conclude that the claims are so infirm, as a matter of law, that they warrant dismissal at this juncture. Accordingly, we deny Argent's Motion to Dismiss Counts III, IV, V, and VI.

Alternatively, Argent requests that, if a dismissal is not ordered, then the Court should strike paragraphs 52 through 78, inclusive, from the Plaintiffs' Amended Complaint, see, <u>First Amended Complaint, Docket No. 22</u>, at pp. 10 through 15 of 31, pursuant to Rule 12(f), Federal Rules of Civil Procedure, in that they are, in Argent's view, "immaterial, impertinent, or scandalous matter." "Although a district court has "liberal discretion' with respect to granting motions to strike under Rule 12(f), the Eighth Circuit has advised that 'striking a party's pleadings is an extreme measure' and such motions 'are viewed with disfavor and are infrequently granted.'" <u>Express Scripts, Inc. v. Maury County, Tenn.</u>, 2010 WL 1838459 at * 1 (E.D. Mo., May 6, 2010), citing, and quoting, <u>Stanbury Law Firm v. IRS</u>, 221 F.3d 1059, 1063 (8th Cir. 2000)[internal quotations omitted]; see also, <u>Daigle v. Ford Motor Co.</u>, --- F. Supp.2d ---, 2010 WL 1875521 at *7 (D. Minn., May 10, 2010)("A motion to strike may be

appropriate if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action."), citing <u>Rios v. State Farm Fire and Cas. Co.</u>, 469 F. Supp.2d 727, 733 (S.D. Iowa 2007).

Paragraphs 52 though 78 detail a history of alleged practices by Roland Arnall ("Arnall"), Ameriquest ("Ameriquest"), Argent, and the Defendant ACC Capital Holding Corporation ("ACC"), which are painted disparagingly with phraseology that connotes illegal financial dealings, such as "funnel[ing] money" [see, Paragraph 58], "bait and switch" [see, Paragraph 65], and "the art of churning" [see, Paragraph 65], to cite but a few. The allegations do not undergird any particular cause of action that the Plaintiffs assert, and they serve no apparent purpose other than posing Argent, and ACC, in a particularly prejudicial light, in companionship with non-parties Arnall and Ameriquest. The tone and content of these extended allegations is analogous to an assertion, in an Answer to a routine traffic accident Complaint, that the plaintiff had been accused of engaging in financially questionable practices. No convictions are asserted, and the nexus between the offending allegations, and any cause of action advanced by that plaintiff, is highly tenuous and remote.

In opposing the Motion to Strike, the Plaintiffs first contend that "[i]t is unclear what specific allegations that Defendants want to have struck" for, "[i]n their

memorandum and in the Proposed Order there is no specific reference to particular paragraphs within the Plaintiffs' First Amended Complaint." <u>Plaintiffs' Response Memorandum in Opposition, Docket No. 46</u>, at p. 21 of 23. However, in their Memorandum in Support, the Defendants plainly state as follows: "* * * Argent and ACC respectfully request that Plaintiffs' allegations in Paragraphs 52 through 78 be stricken from their Amended Complaint because the probative value of such allegations is slight, whereas the likely prejudice to Argent and ACC is substantial." <u>Argent's Memorandum in Support, Docket No. 36</u>, at p. 22 of 23. We do not believe that Argent could have been any more particularized as to the paragraphs that it found to be offensive, and which served as the target of its Motion to Strike.

Otherwise, in opposing the Motion, the Plaintiffs simply urge that "each of the allegations set forth in Plaintiffs' First Amended Complaint are relevant to the determination of whether this Court should pierce the corporate veil or hold ACC liable as a successor corporation." <u>Plaintiffs' Response Memorandum in Opposition, Docket No. 46</u>, at p. 22 or 23. The Plaintiffs make no effort to explain why newspaper articles have to be quoted, or why allegations as to the dealings of Arnall, or Ameriquest, would do anything more than frustrate a streamlined Trial, or confuse, or inflame, the Jury. The claims that the Plaintiffs have asserted against Argent, and

derivatively, against ACC, will rise or fall on their own merits, and are wholly unrelated to the asserted efforts, by nonparties, to capitalize upon the refinancing market. Nor are we persuaded that any of the referenced paragraphs bear upon the identity of Argent and ACC, as the allegations are not fact-based, but rather, are conclusory in both tone and substance.

Accordingly, notwithstanding that such Motions are disfavored, we find the Motion to have merit under the circumstances presented here. To permit patently prejudicial allegations, which bear only the remotest relationship to the pled causes of action, simply diverts, and potentially jades, the Jury's assessment of distinctly separate claims which should wholly occupy the Jury's attention. Therefore, Argent's Motion to Strike should be granted.[5]

---

[5]This case is in its infancy, as no Pretrial Order has yet been issued owing to the pendency of the Dispositive Motions. If, as the Plaintiffs suggest, they intended these allegations to assert that Argent is the alter ego of ACC, or vice versa, then the Plaintiffs can file a timely Motion to Amend their Complaint which properly accomplishes that purpose, but without the immaterial, and impertinent commentary.

3.     <u>The Plaintiffs' Motion for Partial Summary Judgment Against Countrywide</u>.

The Plaintiffs seek a Partial Summary Judgment that Countrywide failed to timely respond to their qualified written request for information, in violation of RESPA, see, <u>Title 12 U.S.C. §2605(e)(1)(A)</u>, and Regulation X, <u>24 C.F.R. §3500.21(e)(1)</u>, and in violation of Minnesota Statutes Section 47.205, Subdivision 2(3). Countrywide opposes the Motion solely on the basis that the Plaintiffs have failed to show that they have incurred either actual or statutory damages as a result of the alleged failure of Countrywide to respond to the Plaintiffs' request for information.

Notably, the Plaintiffs do not request damages as a part of their Motion for Partial Summary Judgment, but simply request an adjudication that, as a matter of law, Countrywide did not respond to the Plaintiffs' qualified written request for information, leaving a determination of what damages, if any, were sustained by the Plaintiffs, to a later determination. We find, on the Record presented, that there is no evidence that Countrywide responded to the Plaintiffs' qualified written request, and Countrywide does not assert, let alone prove, that any response was sent to the Plaintiffs, or their legal counsel. There is uncontroverted evidence that the request

was sent to Countrywide, and was received and reviewed by Countrywide.  See, Affidavit of Mark Ireland, Docket No. 34, at p. 2 ¶¶7-12.  Indeed, counsel for the Plaintiffs has averred that, "[t]o [his] knowledge, no response to the April 10, 2009 [qualified written request] letter has ever been received by [the Plaintiffs' legal counsel] and Defendants did not produce any letter purporting to respond to the April 10, 2009 [letter] in the previous adversary proceeding."  Id. at p. 2 ¶13.

Notably, in response to the RESPA part of the Plaintiffs' Motion, counsel for Countrywide simply avers that, "[d]uring the automatic stay and unbeknownst to Peterson, Fram and Bergman, P.A. [i.e., the attorneys representing Countrywide during the foreclosure proceedings as to the Plaintiffs' home], Plaintiffs served their Qualified Written Request pursuant to 11 [sic] U.S.C. §2605(e) upon the Countrywide Defendants on April 11, 2009."  Affidavit of Jared M. Goerlitz, Docket No. 44, at p. 2 ¶5.  Accordingly, the Record is uncontested that the Plaintiffs' qualified written request was sent, was received, and was reviewed by Countrywide, but no response to that request has been produced either by the Plaintiffs, or by Countrywide.[6]  On this

_____

[6]Countrywide does not contest that a proper qualified written request for information was received from the Plaintiffs, see, e.g., DeVary v. Countrywide Home Loans, Inc., --- F. Supp.2d ---, 2010 WL 1257647 at *9-10 (D. Minn., March 25, 2010), and, in any event, Countrywide had an obligation to acknowledge that it (continued...)

Record, we conclude that the failure of Countrywide to respond to the Plaintiffs' request, within twenty (20) business days, was a violation of RESPA. See, Title 12, U.S.C. §2605(e)(1)(A). Similarly, we conclude that the failure of Countrywide to respond to the Plaintiffs' written request for information, within fifteen (15) business days , was a violation of Minnesota Statutes Section 47.205, Subdivision 2(3).

Necessarily, we leave the issue of damages for another day, as the Plaintiffs presently do not seek an adjudication of damages, and the Record does not presently support such an award. Under RESPA, damages can be actual, or statutory, and specifically, Title 12 U.S.C. §2605(f)(1) provides as follows:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1)    Individuals
>
> In the case of any action by an individual, an amount equal to the sum of --
>
>> (A)    any actual damages to the borrower as a result of the failure; and

―――――――――――――――

[6](...continued)
received that request within twenty (20) business days.  See, Title 12 U.S.C. §2605(e)(1)(A).  Countrywide has produced no such acknowledgment.

(B)    any additional damages, as the court
           may allow, in the case of a pattern or
           practice of noncompliance with the
           requirements of this section, in an a-
           mount not to exceed $1,000.

What qualifies as "actual damages," and whether there is any "pattern or practice of

noncompliance" by Countrywide, are subject to further development and discovery.

Accordingly, the issue of any damages, under RESPA, raises genuine issues of

material fact that cannot be resolved upon a Motion for Summary Judgment.

With respect to the Plaintiffs' claim under Minnesota law, Minnesota Statutes

Section 47.205, Subdivision 4, provides as follows:

> If a lender fails to comply with the requirements of sub-
> divisions 2 and 3, the lender is liable to the mortgagor for
> actual damages caused by the violation. In addition, the
> lender is liable to the mortgagor for $500 per occurrence if
> the violation of subdivision 2 or 3 was due to the lender's
> failure to exercise reasonable care.

While we conclude, as a matter of law, that Countrywide violated Section 47.205,

Subdivision 2(3), we are unable to ascertain what damages, if any, are owing to the

Plaintiffs, as actual damages, or whether Countrywide exercised reasonable care,

because those questions raise genuine issues of material fact. Further, we leave

undecided, given the sparsity of the Record presented, whether mortgagors, such as

the Plaintiffs, can claim any actual damages under Minnesota's Statute, if they obtained a recovery of actual damages under some other Statute, such as RESPA.

In sum, we recommend that the Plaintiffs' Motion for Partial Summary Judgment be granted to the extent of concluding, as a matter of law, that Countrywide violated Title 12 U.S.C. §2605(e)(1)(A), and Minnesota Statutes Section 47.205, Subdivision 2(3).

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Motion to Dismiss of the Defendants Argent Mortgage Company, LLC, and ACC Capital Holdings Corporation [Docket No. 27], be granted, in part, and that the Plaintiffs' Count 1 be dismissed, with prejudice, as to those Defendants.

2.     That the Plaintiffs' Motion for Partial Summary Judgment [Docket No. 31] against the Defendants Argent Mortgage Company, LLC, and ACC Capital Holdings Corporation, be denied.

3.     That the Motion of the Defendants Argent Mortgage Company, LLC, and ACC Capital Holdings Corporation, to Strike Paragraphs 52 to 78, inclusive, of the Plaintiffs' First Amended Complaint [Docket No. 27] be granted.

4.   That the Plaintiffs' Motion for Partial Summary Judgment against the Defendants US Bank, N.A., as trustee for CitiGroup Mortgage Loan Trust, 2007-AMC1, CitiGroup Mortgage Loan Trust 2007-AMC1, and Countrywide Home Loans, Inc. [Docket No. 31], be granted in part, and that, as a matter of law, those Defendants be adjudged to have been in violation of Title 12 U.S.C. §2605(e)(1)(A), and of Minnesota Statutes Section 47.205, Subdivision 2(3).

Dated:  June 16, 2010                        *s/Raymond L. Erickson*
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 30, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 30, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.