UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

STEVEN GEWECKE & TAMARA
GEWECKE,

               Plaintiffs,

v.

US BANK N.A., AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
2007-AMC1; CITIGROUP MORTGAGE
LOAN TRUST 2007-AMC1; COUNTRYWIDE
HOME LOANS, INC.,

               Defendants.

Civil No. 09-CV-1890 (JRT/LIB)

**REPORT AND RECOMMENDATION**

---

This matter came before the undersigned United States Magistrate Judge upon the Motion

of the US Bank, CitiGroup Mortgage Loan Trust 2007-AMC1, Countrywide Home Loans, Inc.

(collectively "Defendants"), to Dismiss Plaintiff's claims.  A hearing on the Motion was

conducted on March 16, 2011.  The case has been referred to the Magistrate Judge for report and

recommendation under 28 U.S.C. § 636(b)(1).  For reasons outlined below, the Court

recommends that the Defendant's Motion to Dismiss be DENIED.

## I.    BACKGROUND

The Geweckes' ("Plaintiffs") bring this action alleging that Defendants' foreclosure

practices are wrongful and illegal.[1]  The Plaintiffs first took out a home equity loan with Argent

Mortgage Company.  Defendant, CitiGroup Mortgage Loan Trust 2007 AMC1 ("CitiGroup

Mortgage Loan Trust") purports to now own the mortgage and note related to Plaintiffs'

---

[1] Originally, Plaintiffs asserted their claims against two additional Defendants, ACC Capital Holdings Corporation
and Argent Mortgage Company.  However, after a Report and Recommendation issued by Chief Magistrate Judge
Erickson on June 16, 2010, the Plaintiffs dismissed all claims against them.  (Stipulation [Docket No. 62]).

property.  (Compl. ¶ 5).  In turn, Defendant, US Bank, is the trustee for CitiGroup Mortgage

Loan Trust 2007-AMC1.  Countrywide Home Loans, Inc. ("Countrywide") serviced Plaintiffs'

loan.

The following facts are set forth in the Second Amended Complaint.  The Geweckes

obtained a refinance loan from Argent Mortgage Company for $135,000 on June 7, 2005.

(Compl. ¶ 9)[2]. Approximately one year later, on September 5, 2006, the Geweckes refinanced

another loan with Argent.  (Compl. ¶ 11).  Both loans were secured by a mortgage against

Plaintiffs' home and were payable to Argent.  (Compl. ¶¶ 9, 11).

On September 10, 2008, U.S. Bank National Association ("US Bank") as Trustee for the

Certificateholders CitiGroup Mortgage Loan Trust, Inc. Asset-backed Pass-Through Certificates

Series 2007-AMC1 filed an Assignment of Mortgage in Stearns County, Minnesota dated

August 11, 2008.  (Compl. ¶ 13).

On October 7, 2008, the newspaper published a foreclosure notice stating that Mortgagee

of Plaintiffs' mortgage loan was Argent, and that on August 11, 2008, Argent assigned the

mortgage to US Bank as Trustee for Certificateholders CitiGroup Mortgage Loan Trust, Inc.

Asset-backed Pass-Through Certificates Series 2007-AMC1.  (Compl. ¶ 15).  The Defendants

sent the Geweckes a notice stating the same.  (Compl. ¶ 16).  However, Plaintiffs allege that the

statements are false because Argent had no interest in Plaintiffs' mortgage loan at the time of the

assignment on August 11, 2008.  (Compl. ¶¶ 17, 18).  Further, Plaintiffs' assert that Argent did

not receive any consideration on August 11, 2008 for the assignment.  (Compl. ¶ 20).  Plaintiffs

additionally assert that that Asset-backed Pass-Through Certificates Series 2007-AMC1 does not

in fact exist and is not the name of any actual legal entity.  Instead, according to Plaintiffs , the

---

[2] Throughout this Report and Recommendation, Complaint refers to the Second Amended Complaint found at
Docket No. 74.

Asset-backed Pass-Through Certificates Series 2007-AMC1 is the name of two separate and distinct legal entities (CitiBank Mortgage Loan Trust, Inc. and CitiGroup Loan Trust 2007-AMC1).  (Compl. ¶¶ 22-27).

In the alternative, Plaintiffs contend that even if Argent owned the mortgage on the date of the purported assignment and CitiGroup Mortgage Loan Trust, Inc. Asset-backed Pass Through Certificates Series 2007-AMC1 was a legal entity, the assignment by Argent to US Bank as Trustee was prohibited by the underlying Pooling and Servicing Agreement ("PSA"). (Compl. ¶ 29).   According to the Geweckes, the PSA states that the closing date ("Close Date") for the pool is March 9, 2007 meaning that all loans intended to be included in the pool must have been conveyed or assigned to the trust by that date.  (Compl. ¶ 31).  Here, however, the loan was not assigned until August 11, 2008.

In addition, "all assets in CitiGroup Mortgage Loan Trust 2007-AMC1 were purchased by CitiGroup Mortgage Loan Trust, Inc. directly from Citigroup Global Markets Realty Group Corp. by the Close Date."  (Compl. ¶ 35).  "These assets were then purchased by the trust from CitiGroup Mortgage Loan Trust, Inc."  (Compl. ¶ 35).  As such, the trust did not purchase any of the mortgage pool's assets directly from Argent. (Compl. ¶ 35).  According to the Plaintiffs, "if the Plaintiffs' loan is owned by CitiGroup Mortgage Loan Trust 2007-AMC1, then there are multiple unrecorded and unnoticed assignments of Plaintiffs' loan."  (Compl. ¶ 36).

On the basis of these facts, Plaintiffs seek numerous forms of relief: (1) a declaratory judgment to avoid notice of the sheriff's sale; (2) a declaratory judgment challenging the Defendants' status as a creditor; (3) a declaratory judgment that the Defendants' failed to record all assignments; (4) breach of contract; (5) slander of title; (6) violations of the Real Estate Settlement Procedures Act; and (7) violations of the Minnesota Mortgage Servicing Statute.

On September 29, 2011, the Defendants filed the present motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the Plaintiffs failed to state a claim upon which relief could be granted in the Complaint.  Defendants raise a number of arguments in support of dismissal as to each of Plaintiffs' alleged claims.  Additionally, Defendants argue that the Plaintiffs lack standing to bring their claims.   The Court considers the Defendants' arguments in support of their motion and the Plaintiffs' responses below.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  On a motion to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004);[3] Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 155.

 "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted).   Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id.  Courts must undertake the

---

[3] "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998).

"context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See Ashcroft v. Iqbal, 120 S.Ct. 1937 at 1950, 1952 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham Street Financial, Inc. v. Pump Media, Inc., 2009 WL 4672668 at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 129 S.Ct. at 1949).

Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard.  Twombly, 550 U.S. at 555.  When analyzing a complaint on a 12(b)(6) motion to dismiss, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

In addition, "[r]ule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   DISCUSSION

Before turning to the substance of the Defendants' arguments, the Court briefly addresses the arguments put forth by the Defendants generally.  In the written submissions and especially at oral argument regarding the present motion, the Defendants failed to adhere to the applicable standard of review and instead persistently argued the merits of their theories based on favorable inferences they felt could be drawn from the factual disputes once resolved in their favor. Defendants either intentionally disregard or misunderstand the standard of review under a Fed. R. Civ. P. 12(b)(6) motion which the Court must apply.  Defendants confuse "a motion to

dismiss pursuant to Rule 12(b)(6), which tests the sufficiency of the plaintiff's allegations, with a motion for summary judgment pursuant to Rule 56, which tests the sufficiency of the non-moving party's evidence in light of the legal theory it has advanced." <u>Covad Commc'n Co. v. Bell Atlantic Corp.</u>, 398 F.3d 666, 676 (D.C. Cir. 2005) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002) ("simplified notice pleading standard [of the Federal Rules of Civil Procedure] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims")).

The following report and recommendation will address Defendants' arguments in support of their motion to dismiss in the manner in which Defendants raised them. Since Defendants raised the same arguments in support of dismissal regarding various claims, the following analysis will necessarily combine the discussion of some of Plaintiffs' claims. As such, the Court will begin by considering the Defendants' arguments in support of dismissing Counts I and III to be followed by a discussion of standing in regards to Counts II and V. The Court will then address Count IV. The Court will finish with an analysis of Defendants' arguments in support of dismissing Plaintiffs' slander of title claim in Count V.

### A. COUNT I AND III: AVOID THE SHERIFF'S SALE DECLARATORY RELIEF AND FAILURE TO RECORD ALL ASSIGNMENTS DECLARATORY RELIEF

In Count I, Plaintiffs assert that the Notice to Foreclose by Advertisement did not meet the requirements of Minn. Stat. § 582.25. (Compl. ¶ 50). Specifically, Plaintiffs claim that the notice failed to state the names of one or more of the assignees; failed to state or incorrectly stated the name of the mortgagee or assignment of the mortgagee; failed to state the proper amount due; and/or the assignment of the mortgage loan is omitted from or misstated in the notice of sale, foreclosure papers, affidavits and/or instruments. (Compl. ¶ 52). In addition,

Plaintiffs allege that the Defendants failed to satisfy the statutory prerequisites for foreclosure by advertisement by not recording all assignments and failing to state the proper amount due.  Id. Due to these alleged violations, Plaintiffs' Complaint requests that the Defendants' publication of the intent to foreclose be set aside.  (Compl. ¶ 53).

In Count III, pursuant to Minn. Stat. §§ 555.01-.03, Plaintiffs claim that there are two or more unrecorded assignments related to Plaintiffs' mortgage loan.  (Compl. ¶ 63).  Thus, Plaintiffs seek a declaration that the Defendants have not satisfied the pre-requisites to foreclose by advertisement, pursuant to Minn. Stat. § 580.02 stating that "no foreclosure by advertisement may be commenced without first recording the mortgage and 'if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered.'" (Compl. ¶ 64) (citing Minn. Stat. § 580.02(3)).

Defendants make the same argument in support of their motion to dismiss Counts I and III.  The Court notes, however, that the Defendants have not provided any specific arguments in support of dismissing Plaintiffs' assertions regarding Count I.  In their motion to dismiss, the Defendants only seek dismissal of Plaintiffs' claims regarding the Defendants' failure to record all assignments of the mortgage under Minn. Stat. § 580.02 found in Count III.  As such, the Court will not recommend dismissal of Plaintiffs claims under Minn. Stat. § 582.25 in Count I which assert that the Notice to Foreclose by Advertisement "failed to state the names of one or more of the assignees; failed to state or incorrectly stated the name of the mortgagee or assignee of mortgagee; failed to state the proper amount due; and/or the assignment of the mortgage loan

is omitted from or misstated in the notice of sale, foreclosure papers, affidavits and/or instruments."  (Compl. ¶ 52).[4]

Defendants' arguments in support of their motion to dismiss are more specifically directed to Count III of the Complaint.  Count III asserts a violation of Minn. Stat. § 580.02 which reads in part:

> To entitle any party to make such foreclosure, it is requisite:
>
> * * *
>
> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered[.]
>
> * * *

The Defendants' arguments regarding what this statute requires as it applies to this case are difficult to decipher considering they rely on an alternative view of the facts not set forth in the

---

[4] The Court notes that the Defendants have not made any arguments as to why the claims under this particular statute should be dismissed.  In fact, the Defendant does not even discuss Minn. Stat. § 582.25. From the parties' briefing, the relevant portions of  Minn. Stat. § 582.25 read:

> Every mortgage foreclosure sale by advertisement in this state under power of sale contained in any mortgage duly executed and recorded in the office of the county recorder or registered with the registrar of titles of the proper county of this state, together with the record of such foreclosure sale, is, after expiration of the period specified in section 582.27, hereby legalized and made valid and effective to all intents and purposes, as against any or all of the following objections:
>
> (3) that the notice of sale:
>> (f) did not state the amount due or failed to state the correct amount due or claimed to be due,
>> (i) failed to state the names of one or more of the assignees of the mortgage and described the subscriber thereof as mortgagee instead of assignee,
>> (j) failed to state or incorrectly stated the name of the mortgagor, the mortgagee, or assignee of mortgagee.
>
> (11) that the date of the mortgage or any assignment thereof or the date, the month, the day, hour, book, and page, or document number of the record or filing of the mortgage or any assignment thereof, in the office of the county recorder or registrar of titles is omitted or incorrectly or insufficiently stated in the notice of sale or in any of the foreclosure papers, affidavits or instruments;

Nowhere does the Defendant explain why the notice of sale or other foreclosure papers, affidavits or instruments does not need to include actual assignments, instead they cite cases discussing what Minnesota law requires to be actually recorded.  While Defendants' argument is undoubtedly relevant to Plaintiffs' claims under Minn. Stat. § 580.02, Defendants fail to make any connection between the alleged failure to record the actual assignments and the Plaintiffs' claim under § 582.025.

Complaint and not in compliance with the applicable standard of review.  However, as the Court views the briefing in this case, their arguments essentially raise two issues.  First, Defendants' arguments raise the applicability of <u>Jackson v. Mortg. Elec. Registration Sys., Inc.</u>, 770 N.W.2d 487, 494 (Minn. 2009) to the facts of this case which necessitates an analysis regarding the difference between equitable and actual assignments.   Second, Defendants contend that the Plaintiffs have not asserted enough plausible facts in order to survive a motion to dismiss in support of their claim that the alleged assignments at issue in this case were actual, and therefore required to be of record under Minnesota law.  The Court will consider each of these issues below.

### 1.      Equitable Assignments v. Actual Assignments

In Minnesota, foreclosure by advertisement is governed by Minn. Stat. § 580.02.   A foreclosure by advertisement is valid only if certain statutory requirements are met:

> (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

> (2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...;

> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded ...; and

> (4) before the notice of pendency as required under section 580.032 is recorded, the party has complied with section 580.021 [requiring the foreclosing party to provide information on foreclosure prevention counseling].

<u>Id</u>.   Section 580.02 is to be strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements.  <u>Jackson</u>, 770 N.W.2d at 494 (Minn. 2009) (quotation omitted). Absent strict compliance with section 580.02, the foreclosure proceeding is void.  <u>Id</u>.

However, the statute remains vague as to what exactly must be recorded.  "Historically, promissory notes and security instruments have been treated as two distinct documents that are legally intertwined."  Jackson, 770 N.W. 2d at 493.  Thus, "[i]t is an oft-stated principle that the 'mortgage,' referring to the security instrument is incident to the debt, such that a transfer of the debt carries the mortgage with it."  Id. at 494.

In Jackson, the Minnesota Supreme Court sought to clarify what interests section 580.02 required to be recorded and analyzed when "there has been no assignment of the mortgage itself, is an assignment of the ownership of the underlying indebtedness for which the mortgage serves as security an assignment that must be recorded prior to the commencement of a mortgage foreclosure by advertisement under Minn. Stat. ch. 580?"  Id. at 493.  The Court concluded that "the specific language of sections 580.02 and 580.04 does not require that a promissory note assignment be recorded before foreclosing a mortgage by advertisement."  Id. at 496.   In making its decision, the Court reasoned that the "legislature's use of the term mortgage in section 580.02(2) is unambiguous to the extent that the term mortgage does not refer to the debt as evidenced by the promissory note" and the term mortgage "does not refer to the promissory note but to the security instrument itself."  Id.

In addition, the Court opined that the long-held view in Minnesota is that "absent an agreement to the contrary, an assignment of the promissory note operates as an equitable assignment of the underlying security instrument."  Id. at 497 (citing First Nat'l Bank of Mankato v. Pope, 85 Minn. 433, 434-35 (Minn. 1902)).   "[M]ere equitable interests" do not need to be recorded.  Id.  at 498.

Initially, in the Defendants' memorandum in support of their motion to dismiss, they argue that Jackson completely forecloses the relief sought by the Plaintiffs because the transfer

of the promissory note resulted in an equitable assignment of the underlying security instrument. (Def.'s Mem. in Supp. of Mot. to Dismiss, p. 12-13).  Thus, according to the Defendants, the facts here mirror the facts in <u>Jackson</u> and the equitable assignment of the underlying security instrument which followed the transfer of the promissory note did not have to be recorded. While Defendants appear to have backed away from this argument at oral argument, the Court nevertheless finds that Plaintiffs' present claims are distinguishable from the claims of the plaintiffs at issue in <u>Jackson</u>.

Here, the Plaintiffs do not argue that the promissory note was assigned merely resulting in the equitable transfer of the underlying security instrument.  Rather, Plaintiffs contend that both the promissory note and the underlying security instrument were previously actually assigned.  The <u>Jackson</u> court never reached the issue of what happens when the underlying security instrument is actually assigned.  In fact, in <u>Jackson</u>, the Court found that based on the record before it, no evidence existed "that the security instruments connected to plaintiffs' mortgages [had] been assigned."  <u>Jackson</u>, 770 N.W. 2d at 496.  In contrast, Plaintiffs allege facts that suggest evidence does exist showing that the mortgage itself was actually assigned.

Seeming to recognize that Plaintiffs assert that actual assignments rather than equitable assignments of the underlying security instruments took place in this case, the Defendants at oral argument and in their reply brief backed away from their original assertions that this case is exactly the same as <u>Jackson</u>.  However, Defendants' continue to cite <u>Jackson</u> for the proposition that the transfers at issue here only assigned the promissory note resulting in an equitable assignment of the underlying security interest, not an actual assignment as the Plaintiffs contend. (Def.'s Reply, p. 3-4).  In support of this assertion, Defendants speculate as to various circumstances under which the unrecorded assignment of the promissory note without an

assignment of the underlying security instrument as well <u>could</u> <u>have</u> occurred in this case. However, these arguments do not establish facts of actual occurrences nor are they based on any factual record as yet developed through discovery. [5]  Instead, the arguments presented by the Defendants are best left for decision following full discovery on a motion for summary judgment pursuant to Fed. R. Civ. P. 56 or trial. [6]

**2.      Whether Plaintiffs Have Asserted Facts Showing Actual Assignment Occurred**

Defendants' reply brief concedes that if a transfer of actual title (mortgage in addition to the promissory note) is ultimately found by a fact finder to have occurred prior to US Bank's taking assignment in the promissory note only, then that prior transfer of actual title to the mortgage would have been required to be first recorded before foreclosure by publication would be proper.  (Def.'s Reply, p. 2) (stating that "actual assignments of the mortgage must be recorded"). [7]  Therefore, in their reply brief, the Defendants shift from arguing that <u>Jackson</u> precludes Plaintiffs' claims regarding improper transfers to instead arguing that that Plaintiffs

---

[5] The Court notes that the Defendants have made the strategic decision to set forth as many arguments as possible to the Court with the hope that one of them will succeed.  Defendants' arguments, especially at oral argument, assume that because banks have been using this same process for years, it follows foreclosure laws.  However, just because the Defendants say that the process is lawful does not make it so.  Defendants must point to some legal authority in support of their arguments beyond general pronouncements that longstanding real estate practice supports their conclusion.  Furthermore, Defendants must assert <u>facts</u>, which at this stage, must be found on the face of the Complaint, in support of their assertion as to how the assignments in this case occurred.

[6] The Court finds that Defendants makes a number of unsubstantiated factual statements.  For instance, the Defendants state that "[o]n the March 9, 2007 PSA closing date, US Bank as trustee obtained possession of the original Note and obtained an equitable interest in the US Bank Mortgage while Argent remained with record and legal title."  (Def.'s Mem., p. 19).  Not only do Defendants fail to point to factual support in the Complaint for this assertion, but also,  this argument in no way helps the Court determine whether or not actual title of the underlying mortgage instrument, rather than only equitable title, was transferred in this case. Further, as with the Defendants' other arguments, it does nothing to address the heart of Plaintiffs' claim, namely that all actual assignments were not recorded.

[7] Because the Defendants concede this issue, the Court does not make a legal decision regarding this issue.

have not asserted enough plausible facts demonstrating that the underlying security instrument was actually assigned to survive a motion to dismiss.[8]

Plaintiffs respond by asserting that they have alleged facts regarding their claims sufficient to survive a motion to dismiss.  Plaintiffs contend that three documents referenced and therefore incorporated into their Complaint demonstrate that they have asserted sufficient facts showing that assignments were made in violation of Minnesota foreclosure statutes.  First, the Plaintiffs point to an "ASSIGNMENT OF MORTGAGE" attached to their Complaint as Ex. C. The document was attached to the original signed copy of their mortgage, but was never recorded.  Furthermore, this document was assigned to "blank."

Second, Plaintiffs argue that Exhibit B to their Second Amended Complaint states that the prior owner of the mortgage was Citigroup Global.  Thus, the owner of the mortgage prior to any actual or equitable assignments to Defendants was not Argent or ACC Capital Holdings as alleged in the assignment recorded in Stearns County.  As such, Plaintiffs allege that they have asserted sufficient facts to support their claim that an assignment demonstrating the transfer from Citigroup Global to CitiGroup Mortgage Loan Trust 2007-AMC1 should have been recorded prior to initiating foreclosure procedures.[9]

Third, Plaintiffs point to the PSA whose language makes it clear that the parties were transferring all interests in both the mortgage and the note.  (Pl.'s Mem. in Opp'n, p. 12)(PSA found at Ex. 2 to Goertlitz Aff., Docket No. 77).[10]  It states that the seller conveys to the

---

[8] The Court notes that Defendants' arguments in his reply memorandum regarding the sufficiency of Plaintiffs' factual allegations were unclear.  It was not until Defendants' oral argument that it became clear to the Court that Defendants were arguing that Plaintiffs' complaint did not allege enough facts in support of their claim that an actual assignment of the underlying security instrument took place.

[9] Defendants make no attempt to argue why this document does not offer a sufficient plausible showing that the mortgage was actually assigned sufficient to survive a Rule 12  motion to dismiss.

[10] Documents referred to in the Complaint constitute part of the Complaint itself and can be considered by a court when deciding a motion to dismiss.  Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (citing Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 2003)

purchaser "all of its right, title and interest in, to and under the Mortgage Loans." (Goertliz Aff., Ex. 2, pp. 258).

According to the Defendants, the documents provided by the Plaintiffs purporting to demonstrate that an <u>actual</u> assignment of title rather than an equitable assignment should fail as a matter of law.  In support of this argument, Defendants make three assertions.  First, the Defendants assert that the assignment endorsed in blank fails as a matter of law.  Second, the Defendants contend that the Pooling and Servicing Agreement ("PSA") provided as evidence of an actual assignment cannot demonstrate that an actual assignment occurred as a matter of law.  Third, the Defendants argue that as a matter of law an actual assignment exists only when the assignment has been recorded.  The Court will proceed to consider each of the Defendants' arguments in turn.

### a.  Assignment Endorsed in Blank

Plaintiffs argue that Ex. C, the blank and unrecorded assignment of mortgage from Argent, offers a sufficient showing that an actual prior assignment of title exists to survive a Rule 12 motion to dismiss.  However, Defendants contend that this assignment is void because under the Minnesota Recording Act any unrecorded transfers of real estate are void against a subsequent purchaser in good faith who records first.  Here, the Defendants assert that the blank mortgage from Argent is void because it is not recorded and it does not give notice to any third party that someone has an interest in the US Bank Mortgage.

However, as the Plaintiffs assert, the unrecorded assignment is only void if the person who executes the subsequent assignment does so in good faith with no knowledge of the unrecorded assignment.  (Pl.'s Mem., p. 14) (citing <u>Peterson-Price v. U.S. Bank Nat. Ass'n</u>, 2010

---

(stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim")).  Here, the Complaint references the PSA.  As such, the Court properly considers it during this Rule 12 motion to dismiss.

WL 1782188 (D. Minn. May 4, 2010)).  The Minnesota Recording Act provides that "[e]very conveyance of real estate ... [that is not] recorded shall be void ... as against any attachment levied thereon ... of record prior to the recording of such conveyance."  Mavco, Inc. v. Eggink, 739 N.W.2d 148, 157-58 (Minn.  2007).  "The Recording Act allows for a subsequent purchaser in good faith who records title first to obtain rights to the property as against any prior purchaser who fails to record his interest."  Peterson-Price, 2010 WL 1782188 at *10 (citing Miller v. Hennen, 438 N.W.2d 366, 369 (Minn. 1989)).

In this case, the Plaintiffs have provided facts to suggest that the Defendants had knowledge of the unrecorded assignment by attaching to their Complaint a copy of the unrecorded assignment that was attached to their original mortgage. The Defendants contend that "an assignment of mortgage that does not contain a grantee cannot put someone on notice of the grantee's interest."  (Def.'s Reply, p. 11).  Once again, the Defendants merely state in a conclusory fashion that they could not possibly have had notice.  However, their argument requires more discovery to show facts demonstrating that there was no possible way that they could have known about the blank assignment.  As such, drawing all reasonable inferences as required in favor of the Plaintiff, they have submitted enough facts showing that the blank, unrecorded assignment was not void.  At this stage, the Defendants' argument that the unrecorded, blank assignment of mortgage is void is premature and dependent upon the resolution of a fact issue as to Defendants' knowledge of the existence of the unrecorded blank assignment of mortgage.[11]

---

[11] In its response to the Plaintiffs' memorandum in opposition to the motion to dismiss, the Defendants add a statute of frauds argument.  However, since this argument was not put forth in its original motion to dismiss it will not be considered.  Local Rule 7.1(b)(3) ("[a] reply memorandum may not raise new grounds for relief or present matters that do not relate to the response."); Casazza v. Kiser, 313 F.3d 414, 420 (8th Cir. 2002) (finding whether document met statute of frauds appropriate on a motion to dismiss when the Defendant raised the statute of frauds in his motion to dismiss and the Plaintiff had an opportunity to "affirmatively show the existence of an appropriate writing or an exception to this defense in order to avoid dismissal").  In addition, the blank assignment may, in fact, meet the

### b.        Pooling and Servicing Agreement

Defendants assert that as a matter of law, the PSA cannot constitute an actual assignment of title of both the note and the underlying mortgage.  Defendants did not make this argument in their memorandum in support of their motion to dismiss and it should not be considered.  Local Rule 7.1(b)(3)("[a] reply memorandum may not raise new grounds for relief or present matters that do not relate to the response.")  However, for the sake of completeness, the Court will briefly address Defendants' argument.

At the hearing regarding this motion, Defendants cited U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40 (Mass. 2011) for the proposition that a pooling and servicing agreement cannot be used as evidence of an actual assignment.

Contrary to Defendants' assertions, when fairly and fully read, Ibanez does not state that a pooling and service agreement cannot ever be a valid assignment.  In Ibanez, the Court analyzed whether the pooling and service agreement there was sufficient to demonstrate an assignment of the mortgage in order to demonstrate a chain of assignments identifying the present holder with the authority to foreclose.  The Court determined that in order to be a valid assignment there must be proof that the assignment was made by a party that itself then held the mortgage.  Ibanez, 941 N.E.2d at 53.  The decision in no way implied that an assignment cannot ever be found in a pooling and service agreement, but rather, only that in the specific situation presented in Ibanez, the pooling and servicing agreement was not a valid assignment.  Id.

---

statute of frauds.  Caselaw does not delineate exactly what is required for an assignment to meet the statute of frauds.  However, the statute does not require one writing that contains all the terms.  See Simplex Supplies, Inc. v. Abhe & Svoboda, Inc., 586 N.W.2d 797, 801 (Minn.Ct. App. 1998). Rather, "[s]everal papers may be taken together to make up the memorandum, providing they refer to one another, or are so connected together, by reference or by internal evidence, that parol testimony is not necessary to establish their connection with the contract." Id. (quoting Olson v. Sharpless, 53 Minn. 91, 55 N.W. 125, 126 (1893)). Here, it is unclear from the present record whether additional papers exist completing the blank assignment at issue and demonstrating who received the assignment of the mortgage.  Therefore, the statute of frauds also constitutes an issue better left for further discovery and disposition at trial or a motion for summary judgment.

The Defendants are incorrect in their assertion that as a matter of law, the PSA does not constitute an actual assignment of the mortgage itself. Other than <u>Ibanez</u>, they offer no case law in support of their argument. Thus, for the purposes of the present Rule 12 Motion to Dismiss the PSA can be used to support the Plaintiffs' claims that an actual assignment of title occurred.

Therefore, the pleadings contain sufficient, plausible allegations to raise fact questions existing as to whether the Pooling and Servicing Agreement constituted an actual rather than equitable assignment of the underlying security instrument. Once again, the Defendants do not confine their arguments to the appropriate standard of review under Rule 12(b)(6) applicable to Plaintiffs' allegations in the Complaint, but rely on supposition favorable to Defendants as to what might have transpired that would make US Bank's assignment ultimately valid.

### c.      Actual Assignment Exists Only if Recorded

The Defendants asserted at the hearing regarding the present motion that an actual assignment does not exist ab initio as a matter of law <u>unless</u> and until the assignment has been first recorded. The Court has not been directed to and remains unaware of any case which supports this position.[12] Furthermore, this argument makes no intuitive sense; the act of recording is not requisite to the creation of an assignment, but rather, it creates a means of prioritizing possibly competing assignments. The statute under which the Plaintiffs bring their claim, Minn. Stat. § 580.02, reads:

> To entitle any party to make such foreclosure [by advertisement], it is requisite:

* * *

---

[12] The Defendants stated at the hearing that <u>Burke et. al. v. Backus et. al.</u>, 51 Minn. 174 (Minn. 1892) supports their argument. The Court in <u>Burke</u> states that assignments have to be recorded. However, the Court does not state that an assignment is only an "actual" assignment if it is recorded. Instead, the case analyzes what must be done before a party can obtain the power of sale; namely make sure the assignment is recorded. It does not, however, address the issue in this case, which is whether Minn. Stat. § 580.02 requires that actual assignments of title have to be recorded to be created in the first instance.

(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered[.]

* * *

Here, the Plaintiffs assert that actual assignments of title must be recorded under the statute. Defendants assert that an assignment is only an actual assignment of title once it has been recorded. However, if Defendant is correct, then Minn. Stat. § 580.02 would be meaningless and serve no purpose since by Defendants' reasoning the only assignments which would have to be recorded under it, ie., the actual assignments of title, would only exist in the first place if the assignment was already recorded. Under, the Defendants' view, once the assignment was recorded then it automatically complies with Minn. Stat. § 580.02; as such, the requirements of the statute would serve no purpose because assignments would either be equitable and not be required to be recorded, or actual and, by Defendant's definition, already recorded. See Omar v. I.N.S., 298 F.3d 710, 721 (8th Cir. 2002) ("It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.... [A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (citations omitted)).

Considering the blank assignment and the Pooling and Servicing Agreement, Plaintiffs' have alleged sufficient facts to create a plausible dispute of material fact as to whether or not actual title (as opposed to mere equitable title) was transferred at some point between origination of the mortgage/promissory note and the assignment presently held by US Bank. Defendants focus only on the last assignment to US Bank; they do not address prior assignments alleged in the Complaint which could ultimately affect whether actual title in the underlying security instrument was transferred at some point, but was not recorded prior to the assignment to US

18

Bank.  Thus, the Plaintiffs have alleged enough facts to "nudge" their claims that the assignments were actual "across the line from conceivable to plausible."  Iqbal, 120 S.Ct. at 1950.  For these reasons, the Court recommends that the Defendants' Rule 12 motion to dismiss be denied as to Counts I and III.

> **B.     COUNT II AND V: STANDING AND STATUS AS A CREDITOR DECLARATORY RELIEF AND SLANDER OF TITLE**

In Count II, Plaintiffs ask the Court to declare that the Assignment of Mortgage dated August 11, 2008, is void because Argent did not have any interest which it could assign on that date, no consideration was given to Argent in exchange for the mortgage loan, and the Assignment of Mortgage was not signed by both parties.  (Compl. ¶ 57).  Further, the information contained in the recorded Assignment of Mortgage was not true.  (Compl. ¶ 58).  Plaintiffs make their claims pursuant to Minn. Stat. §§ 555.01-.03.  As such, the Plaintiffs request injunctive relief holding that the Defendant US Bank must file a release with the County Recorder as it relates to the Assignment of Mortgage and end further collection efforts. (Compl. ¶ 59).  Additionally, Count V asserts a slander of title claim which will also be further addressed in more detail in section D below.

Defendants contend that both these counts should be dismissed for failure to state a claim because the Plaintiffs lack standing to sue.  Particularly, Defendants claim that the Geweckes have not suffered an injury in fact and do not have a sufficient stake in the outcome of the case because the Geweckes do not dispute that some party somewhere has a right to foreclose on their home, and therefore, they cannot suffer any injury because, regardless of who is the correct

foreclosing party, eventually they will lose their home.  Thus, the Defendants contend that the assignment of the mortgage to Defendants has not injured Plaintiffs at all.[13]

"In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."  Summers v. Earth Island Institute, 129 S.Ct. 1148 (2009).  Standing requires plaintiffs to allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  To meet this standard, a plaintiff must show that he has or is under the threat of suffering an "injury in fact" that is concrete and particularized.  Friends of the Earth v. Laidlaw Environmental Servs. (TOC), Inc., 528 I.S. 167, 180-181 (2000).   The injury cannot be conjectural or hypothetical, but instead must be actual and imminent.  Id.  Further, such injury must be fairly traceable to the action of the Defendant.  Id.   Finally, it must be likely that a favorable decision will prevent or redress the injury.  Id.

Plaintiffs have asserted an actual injury supporting standing to challenge Argent's capacity to assign the underlying security interest despite Defendants' argument that even if Argent had no authority to assign the promissory note to US Bank, Plaintiffs would have no standing to challenge the present foreclosure because "someone else" (with proper authority to foreclose) could be just around the corner to initiate foreclosure proceedings and cause Plaintiffs'

---

[13] Defendants additionally claim that Plaintiffs cannot challenge the assignment because they are not parties or third-party beneficiaries to the assignment.  In support of this argument, the Defendants point to Farmers' and Merchants' State Bank of Hutchinson v. Rush, 205 N.W. 951, 951 (1925).  However, this case is inapposite.  It deals only with whether the original maker of the promissory note can challenge whether the transfer of his note was made pursuant to ultra vires contract for consolidation of banks.   Furthermore, Minn. Stat. § 555.02, the Declaratory Judgment Acts allows "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

to lose their home regardless of the outcome in the present case.  Plaintiffs' injury is found if

they are prevented challenging someone like Argent who may not have had the authority to

assign any legitimate interest affecting Plaintiffs' possession of their home; or stated another

way, if Plaintiffs can show Argent had no authority to assign to any interest to Defendants, then

any extra-time that Plaintiffs' may retain possession of their home is a benefit the loss of which

would be a sufficient "injury" to confer standing on Plaintiffs in the present case.  If the instant

lawsuit succeeds, Plaintiffs can enjoy a longer period of time in their home because legitimate

foreclosure proceedings will have to be recommenced by the lawful holder of either actual or

equitable title.

Defendants cite Bottineau v. Aetna Life Ins. Co., 16 N.W. 849 (Minn. 1883) in support of

their arguments regarding standing.  In that case, the Court stated that "[t]he mortgagor, whose

interests were not affected by the fact that others had equitable rights in the mortgage with the

one in whom the legal title was vested, could not on that fact alone, object to his using such a

legal title" to foreclose upon Plaintiff's property.  Bottineau, 16 N.W. at 850.  However,

Bottineau can be readily and easily distinguished from the present case because here, as outlined

above, the Plaintiffs do not claim that equitable title was assigned, but rather they claim that

actual title was at some point assigned without being recorded. In addition, Plaintiffs claim that

the last assignment itself was invalid because Argent did not then have any interest to be

assigned.  In contrast, the plaintiff in Bottineau argued only that because the mortgage was

conveyed to a subsequent party, the foreclosing party did not retain the right to foreclose on the

note because he was not the sole owner of the mortgage in equity.   Here, Plaintiffs make no such

claim.  As such, the Court finds that Plaintiffs enjoy standing to bring the present claims.[14]

---

[14] Defendants also argue that the assignments comply with the Pooling and Servicing Agreement.  (Def.'s Mem., p. 17-19).   However, none of the Plaintiffs' claims at issue on the present motion rest upon whether the assignments

### C.      COUNT IV:  BREACH OF CONTRACT

Plaintiffs allege that a contract existed between themselves and Defendant Argent and its successors and assigns.  (Compl. ¶ 67).  The contract in this case was memorialized in the Mortgage and Note. (Compl. ¶ 68).  The contract provides that Plaintiffs (as borrowers) are only liable for fees "in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under the Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."  (Compl. ¶ 69).  Plaintiffs contend that Defendants charged Plaintiffs' attorneys' fees, property inspection and valuation fees that were not bona fide and reasonable.  (Compl. ¶ 70).  Furthermore, the Plaintiffs assert that the fees charged were not for the purpose of protecting Lender's interest in the Property and rights under the Security Instrument. (Compl. ¶ 71).  Rather, the fees were merely pretextual and were instead used to provide a revenue stream and profit for the servicer, Countrywide.  (Compl. ¶ 72).

As to this count, Defendants contend that the Complaint does not contain enough facts to survive a Rule 12 motion to dismiss.  Defendants assert that the Plaintiffs have not asserted enough facts to show that the Defendants used the Plaintiffs' default as a pre-text to provide a revenue stream and profit.  Additionally, Defendants argue that the Plaintiffs do not point to any specific attorneys' fees, property inspection fees or valuation fees they have been improperly charged.  Rather, according to Defendants, Plaintiffs merely make conclusory allegations.

Plaintiffs maintain that they have asserted a proper claim for breach of contract.  The Complaint alleges that there was a mortgage constituting a contract and that the contract was breached.  Plaintiffs additionally insist that they have stated enough facts in support of their allegations of breach including that the Defendants charged unreasonable attorneys fees, property

_____

violate the Pooling and Servicing Agreement.  Instead, the Plaintiffs assert that the Pooling and Servicing Agreement provides facts in support of their argument that the assignments were actual instead of equitable.

inspection and valuation fees that were not bona fide and reasonable and not for the purpose of protecting the Lender's interest in the property. (Compl., ¶¶ 70-71).  In support of this argument, Plaintiffs point to the copy of their detailed loan history which identifies some of the improper billing activity by the Defendant which was partially attached to the Complaint as Ex. B (and fully attached to the Plaintiff's Memorandum as Ex. B).  Specifically, according to the Plaintiffs, the Defendants ordered 6 broker price options, some within days of each other.  (Pl.'s Mem., p. 20).  Additionally, Ex. B shows that the Defendants ordered 17 inspections costing $15 each. (Id. at 21).

A breach of contract claim under Minnesota law contains the following elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." Parkhill v. Minn. Mut. Life Ins. Co., 174 F.Supp.2d 951, 961 (D. Minn. 2000).

Applying the proper Rule 12(b)(6) standard of review in the light most favorable to Plaintiffs' complaint, Plaintiffs have alleged sufficient facts making it plausible that a breach of contract claim exists in this case.  Plaintiffs have shown that there was a contract and the detailed loan history "raises the right to relief above the speculative level" that the fees and costs being charged by the Defendants were not reasonable and constituted a breach of the contract. Twombly, 550 U.S. at 155.  As such, the Plaintiffs have alleged enough facts to survive a Rule 12 motion to dismiss on a breach of contract claim.

### D.      COUNT V: SLANDER OF TITLE

Plaintiffs further contend that the Defendants made a false statement concerning the real property owned by Plaintiffs.  (Compl. ¶ 76).  According to Plaintiffs, Defendants entered into a joint venture and partnership to originate, securitize, and service mortgage loans.  (Compl. ¶ 76).

As part of this joint venture, the Defendants conspired to create a false chain of title through the fraudulent assignment of Plaintiffs' mortgage note because it was easier and less expensive than recording, tracking, and properly assigning the billions of dollars of mortgage loans that were securitized.  (Compl. ¶ 77).  Plaintiffs further allege that the August 2008, assignment was not true and was published maliciously by being publicly recorded even though it was not valid and disregarded the facts.  (Compl. ¶ 80, 81).

In support of this argument, Plaintiffs point to the electronic loan file regarding their mortgage which clearly states that the previous owner of the mortgage loan was Citigroup Global and not Argent. (Compl., Ex. B).  This demonstrates that the assignment falsely claims that Argent assigned the mortgage directly to the securitized trust.  (Compl. ¶ 84). In addition, Exhibit C is a copy of the blank assignment (discussed above) of Plaintiffs' mortgage loan dated September 11, 2006, which provides some evidence that Argent did not have any interest in the property at the time it was allegedly assigned in August 2008.  (Compl. ¶ 85-86).

As to this claim, Defendants contend that since all assignments the received were recorded under Minnesota law, as they argued in other areas of their motion of dismiss, then the recorded assignment from Argent to US Bank was valid and the Plaintiffs' slander of title claim fails as a matter of law.  Slander of title requires a false statement concerning the Property that was published with malice to others.  However, Defendants contend, if the allegedly slanderous document was published lawfully, as they claim was the case here, then a slander of title claim cannot exist.

A slander of title claim requires: "(1) a false statement concerning the real property owned by the plaintiff; (2) publication of the false statement to others; (3) publication of the false statement with malice; and (4) publication of the false statement concerning title to the property

caused the plaintiff pecuniary loss in the form of special damages." Hayes v. Broman v. J.P. Morgan Chase Bank, N.A., 724 F.Supp.2d 1003, 1016 (D. Minn. 2010) (citing Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000)).

Defendants' foregoing argument necessarily relies entirely on the validity of the assignments they received. Because Plaintiffs have alleged sufficient facts under the Rule 12(b)(6) standard of review as to the invalidity of the actual assignments, Defendants' motion to dismiss this claim should also be denied. Defendants' position depends on a fact finder first resolving in the Defendants' favor the questions of whether the assignments were valid and whether they needed to be recorded. That issue cannot be decided on the present motion to dismiss and remains better suited for decision at trial or summary judgment following discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Defendants' Rule 12(b)(6) motions to dismiss be denied. However, he Court cautions the parties against reading this report and recommendation too broadly. The Court does not make any suggestions as to the likelihood that Plaintiffs' claims will ultimately succeed on the merits. Rather, the Court's decision merely finds that under the standard of review applicable to Rule 12(b)(6) motions, the Plaintiffs have alleged enough facts to state a plausible claim for relief.

Based on the foregoing, and all the files, records and proceedings herein,

1.      IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss [Docket No. 75] be DENIED.

Dated:  June  6, 2011                                       s/Leo I. Brisbois
                                                            LEO I. BRISBOIS
                                                            United States Magistrate Judge

N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 20, 2011,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.